# WELTMER et al. v. BISHOP, Appellant.

### Division One, December 24, 1902.

1. **Libel: MAGNETIC HEALING: FRAUD: SUFFICIENCY OF EVIDENCE.** The evidence, in an action to recover damages for an alleged libel of plaintiffs' business, showed that plaintiffs, who were men without the pretense of scientific learning, and who possessed only to a limited degree even the rudiments of education, were engaged in a business which they called magnetic healing. They employed for chief assistants three men who were also unlearned in any science, and of little common education, and in addition to these a large number of female typewriters. They professed to possess miraculous power to heal all diseases without medicine or surgery. Plaintiffs testified that they had cured patients thousands of miles away, and could cure thousands in an instant; that they could cure any disease, at any distance, by a mysterious influence of the mind of the healer over that of the patient. Their "absent treatment" patients numbered many thousands, and these were treated by the typewriters who alone read the letters coming from the patients, and answered them. One woman testified that she had been cured of cancer of the breast by the healer's "absent treatment," notwithstanding the evidence showed that at the time this cure was effected, the healer himself was absent, and there was no one but the typewriter to transmit the healing influence. *Held*, that the business of plaintiffs, as shown by their own evidence, is of such a character as that it is not entitled to protection under the law of libel. *Held*, further, that the court should not have left it to the jury to determine the legitimacy of plaintiffs' business, but should have given a peremptory instruction for a verdict for defendant.

2. ———: ———: **PROTECTION OF LAW: BURDEN OF PROOF.** If there was anything in plaintiffs' business of magnetic healing which entitled it to the protection of the law, and which was not perceptible to the uninstructed, the burden was on them to show the rationale of it, and failing to do so, the court should close its doors against them.

3. **Decisions of United States and Missouri Supreme Courts: NO CONFLICT.** The judgment of this court, based on the character of plaintiffs' business, as shown by the evidence, that such business is a fraud, does not conflict with a judgment of the United States Supreme Court, based on a demurrer admitting that the business of plaintiffs is a system of healing conducted on practical and scientific principles.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,*
Judge.

REVERSED.

*W. C. Scarritt, W. M. Williams* and *M. T. January*
for appellant.

(1) Courts do not look with favor upon charlatans.
Richard v. Judd, 15 Abb. Rep. 184. Weltmer's busi-
ness comes within the definition of a common fraud.
Barr v. Baker, 9 Mo. 850; Thompson v. Cohen, 127 Mo.
215; State v. Nevell, 1 Mo. 248. It is held not libelous
to call a person who practices medicine without full
medical qualifications a quack or impostor, for the law
only protects lawful employments. Collins v. Car-
neigie, 1 A. & E. 695, 3 N. & M. 703. Words are not act-
ionable on the theory that they touch one in his business,
profession or occupation where his business, profession
or occupation is not a legal one. 19 Am. and Eng.
Ency. Law, p. 947; Hunt v. Bell, 1 Bing. 1; Morris v.
Longsdale, 2 B. & P. 284; Trummer v. Hiscock, 27 Hun
(N. Y.) 364; Harris v. Burley, 8 N. H. 216. (2) If
a communication is prima facie privileged, the plaintiff
can not recover without proof of actual malice. Bige-
low on Torts, p. 52; Railroad v. Richmond, 4 L. R. A.
280; Starkie on Libel and Slander, sec. 351; Finley
v. Steele, 159 Mo. 299. (3) When a man challenges
public criticism by drawing attention to himself by
advertising a new method of treatment, he and his
method may be criticised, and such criticism is quasi
privileged and, if believed to be true, is not actionable.
Starkie on Slander and Libel, secs. 255, 256; Odgers on
Libel and Slander, p. 49; St. James Military Academy
v. Gaiser, 125 Mo. 517; Press Co. v. Stewart, 119 Pa.
584.

*Francisco & Clark* and *Scott & Bowker* for re-
spondents.

The question is, under the testimony in this case,

was the jury authorized to return a verdict finding that respondents were doing substantially what they advertised to do, in the treatment of diseases and that their business was a legitimate one and not a fraud? If there was, then the court ought not to disturb the finding of the jury on this proposition. In a matter of this kind the best evidence of whether or not respondents were able to and did do for their patients what they claimed they could do, is the testimony of the patients themselves. They certainly ought to know better than anyone else whether or not respondents' system was a sham and a fraud. It would not be a matter of guesswork with them. It would not be a speculation over which is the best system or theory for the treatment of disease. The record in this case shows that respondents introduced over fifty witnesses at the trial, of persons who had been treated by the respondents both by personal and absent treatment for different diseases. They testified they had been benefited or cured of the disease for which they had been treated. The testimony shows most of them to have been intelligent, representative citizens in the communities in which they lived. Most of them testified that prior to going to respondents, they had been treated by regular physicians without result. Their testimony shows them to have been unbiased, honest, and without any interest in this case other than to tell the exact truth. If their testimony is to be believed, and the jury certainly had the right to believe it, then respondents did effect cures substantially as they advertised to do.

VALLIANT, J.—Plaintiffs sue as partners in trade to recover damages for an alleged libel of their business. They recovered a judgment for $750 and the defendant appeals. The case comes to this court because a constitutional question is involved.

The petition alleges that the plaintiffs are engaged in the business of magnetic healing and had been so engaged for more than two years at the city of Nevada, and that large numbers of people had been coming to

them from abroad to be treated by the plaintiffs for diseases; that defendant wrote and caused to be published in a newspaper an article in which the plaintiffs were called "miserable charlatans" and in which statements were made concerning their business which were false, libelous and malicious. The article is set out in full in the petition, but under the view we have taken of the case we deem it unnecessary to copy it in this statement, or to say of it more than that if the plaintiffs' business was legitimate, and if the statements were false, and if the article referred to the plaintiffs, it was libelous.

The answer admitted the authorship and publication, alleged the truth of the statements, that it was not intended to refer to plaintiffs in particular but to a large class that were engaged in the business of so-called magnetic healing, that the business was a fraud practiced on the public and that defendant deemed it his duty to expose the fraud, and wrote the article in good faith and without malice. The court on motion of plaintiffs struck out all of the answer except that part admitting the publication and pleading its truth.

Upon the trial the evidence both for plaintiffs and defendant showed as follows: The plaintiffs, who were men without the pretense of scientific learning, and who possessed only to a limited degree even the rudiments of education, were engaged in business at Nevada which they called magnetic healing. They employed for chief assistants three men who were also unlearned in any science and of little common education, and in addition to these a large number of female typewriters. They advertised very extensively in the chief cities of the United States and in foreign countries. In their advertisements they professed to possess miraculous power to heal all diseases to which human beings were liable, without medicine and without surgery; that to them had been committed a startling revelation whereby all ailments are dispersed as if by magic; that they had cured patients thousands of miles away and could cure thousands in an instant; that they exerted the same

powers that Jesus Christ exerted to cure diseases nineteen hundred years ago. By far the greater number of their patients were at a distance and the only communication with them was by letter; those they proposed to cure, no matter what the disease, and though thousands of miles away, by a mysterious influence of the mind of the healer over that of the patient. The chief direction in the letter to the distant patient was that at a certain hour in the day he should dismiss all disturbing thoughts and bring his mind into a passive condition to receive the influence from the mind of the healer, who, at that same hour in Nevada, would bring his mind to exert the mysterious influence desired. The business that the plaintiffs built up by these methods was indeed wonderful in respect of its magnitude; they were making a thousand dollars a day. People suffering with sickness and disease came by hundreds to Nevada to receive the magic touch of these men and many of them went away believing that they had been cured or benefited. But the great bulk of the business was through what they called their absent treatment, that is, by letter correspondence. Their patients of this kind numbered many thousands, and they were treated by the typewriters who alone read the letters coming from the absent patients and answered them. The answer to each was in the main a copy of a circular letter prepared by the plaintiffs and furnished the typewriters for that purpose. One of the plaintiffs, who was the originator of the scheme and the chief director of the business, explained that the process of this absent treatment was that at the hour designated in the letter in which the patient was to make his mind passive to receive the healing influence, he, the healer, would bring the powers of his own mind to bear on that of the distant patient and the beneficial results would follow. In this way many hundreds of men, women and children in different parts of the world were treated at the same instant. When his attention was called to the fact that at a stated hour in Nevada, when the healer was exer-

cising his mind to transmit its influence to the expectant patients in different parts of the world, that time would not correspond with the hour in distant and different localities, he gave no clear explanation of the point. It was also shown that when he left the business and went to Colorado for a summer vacation, this absent treatment went on as efficiently through the instrumentality of the typewriters as when the healer was present. One of the witnesses for the plaintiffs testified that she was a married woman living near Chicago; that she had been afflicted with cancer of the breast and other trouble peculiar to women; that she took this absent treatment from Prof. Weltmer, one of the plaintiffs, from May 1st to July 1st, 1899, and was entirely cured. This was one of the cures effected by this absent treatment, when the healer was himself absent and no one but the typewriter in Nevada to transmit the healing influence. The testimony as to the method of treatment of those who came in person to Nevada showed that it was in the main an abuse of their credulity and in some instances consisted only of disgusting suggestion.

Quite a number of witnesses testified for the plaintiffs that they had taken these treatments and were cured or benefited and Professor Weltmer himself testified that of the many thousands of patients fully ninety-five per cent had been cured. There were those who had taken the treatments who testified for defendant that they received no benefit, and there was expert testimony on the feasibility of such treatments.

There was a large volume of evidence and several questions arose during the trial which, if the plaintiffs were entitled to go to the jury at all, would deserve our attention, but in the view we have taken of the character of the plaintiffs' business it is unnecessary to go farther into the case.

Defendant asked a peremptory instruction for a verdict in his favor which the court refused.

The case was given to the jury under several instructions, among them the following:

"The court instructs the jury that if you find and

Weltmer v. Bishop.

believe, from all the evidence and the facts and circumstances in evidence, that the business in which plaintiffs were engaged upon August 16, 1899, was and is an imposition and fraud upon the general public, then your finding must be for the defendants. In this connection, however, you are further instructed that in determining whether or not such business was an imposition and fraud upon the general public, at the time aforesaid, you will consider the general character of the business as disclosed by the facts, as well as the results of their said business methods with the general public, as shown by the evidence and facts and circumstances in evidence, and if you find from all the evidence and the facts and the circumstances in evidence that their said business was and had been substantially beneficial to the general public and their methods had substantially produced the results claimed for them by plaintiffs, then the same is not a fraud or imposition upon the general public, and you should find for the plaintiffs upon this issue.''

From this it will be seen that the court submitted to the jury to say if the plaintiffs' business was legitimate, and in weighing that question they were to consider the results as disclosed by the evidence, and on the whole, if the results had been beneficial, the business was not to be adjudged a fraud.

Courts are not such slaves to the forms of procedure as to surrender their own intelligence to an array of witnesses testifying to an impossibility. They are not required to give credence to a statement that would falsify well-known laws of nature though a cloud of witnesses swear to it. We recognize that in the realm of science much is yet undiscovered, and especially is this so in the science relating to diseases of the human system and their treatment. Different schools of medicine contend with each other on vital questions, and as long as the contest continues with reason it can not be said that the right of either as above the other has been demonstrated. But if either school would convince us that it is right or even that it is entitled to be recog-

nized as a contestant, it must appeal to our intelligence
and discuss the subject on the basis of natural laws.    If
it can not be discussed on that basis, there is nothing
to discuss.    If a man comes into court claiming to
possess supernatural powers and brings with him wit-
nesses who swear he has done for them that which we
know is impossible, we are not required to believe such
evidence.    Here was a woman, who perhaps believed
what she said, who testified that by a mental process of
one of these plaintiffs, transmitted to her through a
letter several hundred miles away, she was entirely
cured of a cancer of the breast.    The fact that the plain-
tiff, who was supposed to have transmitted the influ-
ence from Nevada, was not there at the time, does not
add to the absurdity of the statement.    And the testi-
mony of other witnesses, perhaps also sincere, to the
effect that they were cured of otherwise incurable dis-
eases by such mysterious process can have absolutely
no lodgment in our intelligence.

Under the instruction above quoted the jury were
directed to heed such evidence and if, on the whole, it
showed that good had resulted to the community from
the practices of the plaintiffs, the jury were to find that
the business was a lawful one.    It was an instruction in
effect directing the jury to surrender their own intelli-
gence to the preponderance of statements of witnesses,
irrational though such statements were.    Under the
conceded facts there was no evidence to justify the sub-
mission of the case to the jury, and the peremptory in-
struction for a verdict for the defendant should have
been given.

If there was anything in the plaintiffs' business,
which they call magnetic healing, that entitled it to the
protection of the law and which was not perceptible to
the uninstructed, the burden was on them to show the
rationale of it, and failing to do so the court should close
its door against them.    [Richards v. Judd, 15 Abb. Pr.
184.]

The law of libel is not designed to shield one in the
practice of an illegal business.    [18 Am. and Eng.

Ency. Law (2 Ed.), 947; Johnson v. Simonton, 43 Cal. 242; Perry v. Man, 1 R. I. 263; Starkie, Libel and Slander (5 Ed.), 522.]    The business of the plaintiffs, as shown by their own evidence, is of such a character as that it is not entitled to protection under the law of libel.

This case has been conducted on both sides with marked ability and there yet remain in the briefs of the learned counsel interesting questions which are tempting to consider, but in view of what we have already said, the case is disposed of before those questions are reached.

The judgment of the circuit court is reversed.    All concur.

## ON MOTION FOR REHEARING.

VALLIANT, J.—On the motion for rehearing, our attention is called to a recent decision of the Supreme Court of the United States in the case of The American School of Magnetic Healing v. McAnnulty, 23 Supt. Ct. Rep. 33, which the learned counsel for respondents are of the opinion announces a different conclusion as to the law from that declared in the opinion of this court in the case at bar.    But the case in which the Supreme Court of the United States pronounced its judgment was very different in its facts from the case at bar. That was a suit in equity in which the complainants in their bill made the following averments:  ''And your orators state that said business is a legal and legitimate business, conducted according to business methods, and is founded largely and almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting and remedying thereof.    And that the human race does possess the innate power, through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to, and complainants discard and eliminate from their treatment what is com-

monly known as divine healing and christian science, and complainants are confined to practical scientific treatment emanating from the source aforesaid.''

The bill further averred that the postmaster at Nevada under orders from the Postmaster-General had refused to deliver to complainants the mail directed to them in that office and was about to stamp all their letters ''fraudulent'' and return them to the writers, and the prayer of the bill was for an injunction to restrain the postmaster from doing so. The defendant demurred to the bill, the trial judge sustained the demurrer and refused the injunction. On appeal to the Supreme Court Mr. Justice PECKHAM, who rendered the opinion, said: ''As the case arises on demurrer, all material facts averred in the bill are of course admitted.'' Then, after quoting the above extracts from the bill, he said: ''These allegations are not conclusions of law, but are statements of facts upon which, as averred, the business of complainants is based.'' The court held that upon that statement of facts admitted to be true, the business of complainants was not within the class forbidden to be conducted by use of the mails, and therefore reversed the judgment of the circuit court and remanded the cause with directions to overrule the demurrer, with leave to defendant to answer, and in concluding the opinion of the court said: ''In overruling the demurrer we do not mean to preclude the defendant from showing on the trial, if he can, that the business of complainants as in fact conducted amounts to a violation of the statutes as herein construed.''

Our decision in the case at bar is not based on a demurrer admitting that the business of plaintiffs is a system of healing conducted on practical and scientific principles, but it is based on the character of the business as shown by the evidence at the trial. The motion for rehearing is overruled. All concur.