HODGES, Respondent, v. ST. LOUIS & SAN FRAN-CISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, Argued February 3, 1909, Opinion filed February 23, 1909.

1. NEGLIGENCE: Personal Injuries: Proximate Cause: Definition. The proximate cause of an injury is the breach of a duty owed to a person, followed by an injury to him, either as a direct result of the dereliction or through its consecutive consequences, and subject to the condition that there must have been sufficient probability of the breach proving detrimental instead of innocent.

2. ————: ————: ————: Burden of Proof. The burden, in an action for damages on account of •personal injuries caused by negligence of the defendant, is primarily upon the plaintiff to show a direct connection between the negligent act and the injury.

3. ————: ————: ————: ————: One of Two Causes. And in such case where the injury may have resulted from one of two causes, for one of which and not the other the defendant is liable, it is for the plaintiff to show with reasonable certainty that the cause for which the defendant is liable produced the result.

4. ————: ————: ————: ————: ————: Prima-Facie Case. Where the care-taker of locomotives at a station, whose duty it was to watch locomotives held at the station and keep the fires going through the night in order that the engines might be at all times ready for service, was injured while firing an engine by stumbling in the darkness against the fire box, and, where, in an action for the injury received, he alleged and the proof showed that the railroad company, defendant, had failed to furnish him oil for a torch which was necessary to use in such work so that at the time of the injury he was working without a light, and where it was further shown that he stumbled upon a piece of coal that was left upon the platform where he worked at the time of the injury, the evidence was not sufficient to warrant a verdict on the theory that the failure of the company to furnish oil for a torch was the proximate cause of the injury.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1)   It is insisted by defendant that the failure to furnish oil to plaintiff for a light for his torch was not the proximate cause of the injury under the facts in this case and he should not recover.   The accident might have happened in broad daylight and it is conjecture to assume, under the evidence, that the defendant is liable because it happened on a dark night.   The coal or cinders on the floor was caused by plaintiff's act, and his stepping on the coal or cinders was the cause of the accident.   Foley v. McMahon, 114 Mo. App. 442; Lawrence v. Ice Co., 119 Mo. App. 316; Dunn v. Railway, 21 Mo. App. 188; Klockenbrink v. Railroad, 81 Mo. App. 356; Hicks v. Railroad, 46 Mo. App. 304; Brown v. Railroad, 20 Mo. App. 222; Cudele v. Kirkbride, 117 Mo. App. 412; Young v. Railroad, 113 Mo. App. 636; Dunphy v. Stockyards Co., 118 Mo. App. 506; Warner v. Railroad, 178 Mo. 133.   (2)   Even though it be conceded that the defendant was negligent in not furnishing the plaintiff oil for his torch, yet plaintiff's contributory negligence was such as to bar his recovery.   Oates v. Railroad, 168 Mo. 547; Hogan v. Railway, 150 Mo. 55; Callahan v. Warne, 40 Mo. 136; Oglesby v. Smith, 38 Mo. App. 70; Knorpp v. Wagner, 195 Mo. 666; Richardson v. Metzger, 171 Mo. 666.

*Wilson Cramer* for respondent.

STATEMENT.—Action for personal injuries.   After alleging the incorporation of the defendant, appellant here, and the employment of the plaintiff, respondent, as a night watchman and a "hostler," as the cleaner and caretaker of a locomotive not under use is called,

at Wittenberg, a station on appellant's road, and that it was his duty to watch the locomotive engines held at the station and to keep up the fires under their boilers during the night, so that they would be ready to move at any time, it is alleged in the petition, that in the performance of his duties, it was necessary for respondent to have a light, and that appellant furnished him with a torch, such as is commonly used by railroad men, consisting of a tin bowl with a spout to hold the wick, and that it was the duty of appellant to supply respondent with the necessary oil for this torch; that on the night of the fourteenth of January, 1907, which was a very dark night, respondent was compelled to perform his work without a light because of appellant's carelessness and negligence in failing to supply him with oil for this torch, although repeatedly notified by respondent that he was out of oil; and that while respondent was in the discharge of his duty and was shoveling coal into one of appellant's engines at Wittenberg, respondent being unable, on account of the darkness, to see the floor or deck of the engine, "made a mistep and stepped on some loose coal or cinders lying on the floor or deck and was thrown too far forward while in the act of pitching a lump of coal into the furnace, and his left hand came violently in contact with the edge of the rim of the furnace opening, and two of the fingers of that hand were cut off by the force of the blow. Averring that he had suffered great pain from the injury, and had lost much time, and that his earning capacity has been greatly diminished, respondent charges that the injury and loss sustained by him "are directly due to the carelessness and negligence of the defendant in failing to supply him with a light while in the discharge of his duties and requiring him to perform the same in the dark, and that by such carelessness and negligence of the defendant, plaintiff has been damaged in the sum of three thousand dollars, for which sum he prays judgment." The answer, after

a general denial, pleads contributory negligence and assumption of the risk; to this a general denial of the new matter in the answer was set up in the reply.

Respondent testifying in his own behalf, and we here give his testimony as set out by his counsel in the statement and brief filed, testified that he had charge of the engine on which the accident occurred; that it was his duty to keep up fire all night and move the engines about when other trains came there to pass one another;.that he had full control of the engines; was night watchman and hostler; had to clean fires and keep up steam so that the engines could be moved almost any minute, and also coal the engines. On the night of January fourteenth, when the accident occurred, he had only one engine in charge. It was a very dark, rainy night; it was hardly possible to get along in the performance of his work without a light; had been furnished with torches and also had been furnished, time and again, with oil. Explaining what a torch was, he continued that he had no oil for his torch on this night in January; was without oil then and had been without it for some eight or ten days previous; had notified the master mechanic at Cape Girardeau, which was some thirty miles distant from Wittenburg, time and again that he had no oil; had sent the empty cans in so that they could send him oil and had asked the agent at Wittenberg to write for oil, that he was getting out of oil. The agent at Wittenberg had helped him out as long as he could, then ran out of oil himself and wrote to Cape Girardeau for it. Was in charge of the job at Wittenberg under Mr. Henry, whose office was at the Cape and it was from that place he was in the habit of getting oil when he had needed any. During part of the time the company had failed to furnish oil, he had bought oil himself to keep from being in the dark, but stopped that because he didn't want to furnish the company with oil; they were supposed to furnish him. On the night of the accident, respondent was

through cleaning the engine and was getting the fire in shape. Got his orders from the master mechanic to be mighty careful and take good care of the flues, so that they wouldn't leak and the latter told witness he would furnish whatever he needed that was necessary. To keep the flues from leaking on cold nights, "you are bound to have a good heavy fire, keep it up against the flues, so that the flues will not get any cold draft and to keep them in good condition." The flues are toward the front, toward the head of the engine; the engine is equipped with a firebox; "the firebox is first; when you are on the engine you stand in front of the firebox;" from the opening of the firebox to the flues is from eleven to fourteen feet, then come the flues. "You have to throw the coal back to the firebox when you want to bank a good fire up against the flues to keep them in good shape." On the night in question witness was cleaning the engine and had just finished cleaning her and straightened out the fire and had fixed a good fire up against the flues—was shoveling the coal; in banking the fire always used lumps of coal as much as he possibly could; that was the general rule in banking a good fire, "a man has to use lumps to get them back up against the flues as near as he possibly can;" and he was throwing lumps in, up against the flues, and it was while doing this, that he slipped and got hurt. Had no light at the time but that which came out of the fire door; had no oil for his torch nor any light for his torch at the time; could not see the deck of the engine. He was asked, "How large is the opening of that firebox?" He answered, "Why, it is perhaps—from the firebox doors to the doors of the tender, perhaps four feet between there, and the width of it is not more than two and a half feet wide, maybe three feet, I don't know." Said that the width of the opening and the length would be perhaps four feet from the firebox door to the tender where the coals lays. He lost two fingers by the accident. Had some coal in his hand, a little lump, and

intended to throw it up against the flue, and when he. made a step, he stepped on some coal and stuff, and it slipped and threw him up against the edge and took his fingers off; mashing one clear off and the other was hanging on the side. Couldn't say how the coal came to be on this deck, that is the coal he stepped on; it must have fallen there somehow or other; had swept behind the door but couldn't see what he was sweeping, it was so dark; couldn't see the deck, that is, the floor, at all, couldn't see anything on that; the fire door being about a foot or more higher from the floor of the tender and engine, and all the light he had to see by was what was thrown out of the door of the firebox; it did not throw any light on the floor.

So far, we have followed the statement of the case as given by the learned and industrious, as well as accurate counsel for the respondent. Going a little further into the abstract than he has done, the following also appears in the evidence. Mr. Henry, the master mechanic, had given respondent orders to be "mighty careful and take good care of the flues," so that the flues would not leak, and had told him that he would furnish what was necessary that he needed. Henry had told him this in person. Said the respondent, substantially, when you are standing on the engine, you stand in front of the firebox and from the opening of the firebox to the flues is from eleven to fourteen feet. On the night of the injury, he says, he had been cleaning the engine and had just finished cleaning her and straightening out the fire and had fixed a good fire up against the flues and was shoveling in coal and in doing this latter used lumps of coal as much as he possibly could; had to use lumps to get them back up against the flues as near as he possibly could; was throwing lumps in up against the flues and it was while doing this that he slipped and got hurt; the opening of the firebox door is perhaps four feet from the door of the tender and the width is between two and one-half and three feet, that

is, there would be perhaps four feet from the fire door to the tender where the coal lays on the floor; that when he fell he had some coal in his hand, a lump of coal weighing about eight or ten pounds and very solid; would pick up these lumps, carry them to the firebox or, rather, "you can nearly reach the firebox and do not have to carry it clear up to it. You don't have to carry all the way from the tender to the firebox but you stoop and throw it in." Had been shoveling coal with a shovel before that and did not know how many lumps he had pitched in with his hands. "When you pitch it in, you pitch it just as you do anything else. You pitch it into the door of the firebox which is twelve to fourteen inches square. When you are through with banking the fire you have to leave the engine in shape so that you could get steam up and move it around at any minute and you clean the fire out; take the ashes and everything out and clean it and fix up a good strong fire and then clean up the floor. In cleaning out a fire box, one has to shake all the ashes and stuff out, clean the clinkers out down on the grate, so that the grates are clean." Had done that entirely, had taken the cinders out on the track and that was all he had to do; had not taken the cinders out of the pan. Had done all this without a light. There was some fire in the engine box or on the grates. "The way you do is to clean out one-half of the grates first, pulling your fire to the back, then after you have cleaned up you take your fire and shove it up against the flues then you clean the back grate." Was through with that and then started his fire again and was putting fresh coal on when this happened; was about through putting the coal on; generally took him an hour and a half or two hours to clean, and he had been coaling about half an hour before he was hurt; was not through with the engine that night when he was hurt but just through hav-

135 App—44

ing the fire banked; after he got through he would have had to clean the pans and wipe the engine; did this work that night without a torch; went to work about 6:30 that evening and the accident happened about ten o'clock at night. It was dark and rainy that night. Said he had loaded many nights without a torch; had a laborer with him assisting him in doing the work of shoveling the coal, who was there that night; the duty of this laborer was to do anything that he (respondent) asked him to do to help him, but that particular night, respondent says he did the work of banking the fire himself, as he had often done before. The laborer or helper who was with him that night was underneath the engine cleaning it while respondent took care of the fire. Respondent had placed the coal in at about seven o'clock that night and had some waste which they used for a light; had coaled that engine many times at night. "When they had moonlight that they could see by and had no oil, they worked away at the engine and when there was no moonlight they went at it anyway." He further testified that he had full control of the engines while the cleaning and coaling was going on; had often had several locomotives there at once, but on this particular night had only the one. Repeats that he could not say how the coal came to be on the deck of the locomotive; "it must have fallen there somehow or other." He had swept behind the door but could not see what he was sweeping; it was dark and he "couldn't see the deck at all, that is the floor; couldn't see anything on that; and the fire door is about a foot higher or more from the floor of the tender and engine," and all the light he had to see by was what it threw out of the door of the firebox but it threw no light on the floor.

This was practically all the evidence in the case and the only witness who testified as to the accident was respondent himself. A physician was introduced by respondent who described the condition of respond-

ent at the time he visited him on the night of the injury. Appellant also introduced a physician, who testified to the extent of the injury. These were all the witnesses who were examined by either party.

At the close of the testimony the appellant offered a demurrer to the evidence which was overruled and exception was duly saved. The court gave three instructions at the instance of respondent, to which appellant duly excepted. Two instructions were given at the instance of appellant. In the view we take of the case, it is not necessary to take these up—our decision turns on the refusal of the court to take the case from the jury. The jury returned a verdict in favor of respondent for $2,000. Motions for new trial and in arrest were filed, overruled and exceptions duly saved and the case comes here on appeal.

REYNOLDS, P. J. (after stating the facts).—The point of contention on the part of the appellant is, whether the failure to supply oil and the consequent lack of light with which to do the work was the proximate cause of the injury. The question of proximate cause and its accurate definition, have vexed the courts and been the occasion of a great amount of divergence of decision.

The authorities bearing on the question have been very thoroughly collated in two recent decisions of this court, one Foley v. McMahon, 114 Mo. App. 442; the other, Lawrence v. Ice Co., 119 Mo. App. 316. It is not considered necessary here to enter into a lengthy discussion or examination of this point, for, after all, each case appears to have turned so much on the facts in that particular case that the announcement of a settled rule applicable to all cases, has not often been attempted. This court, speaking through Judge Goode, in Lawrence v. Ice Co., supra, has given a definition of the term "proximate cause," which aptly applies to this case. It is there said (l. c. 328) : "As used in

judicial decisions the term signifies a breach of duty owed to a person followed by injury to him, either as a direct result of the dereliction or through its consecutive consequences, and subject to the condition that there must have been sufficient probability of the breach proving detrimental instead of innocent, that, in reason, blame for the injury may fairly be imputed to the wrongdoer." It is also held in the same case (l. c. 325) that, "Whether an act of negligence was the proximate cause of an alleged damage, is an issue of fact if contrary opinions may arise on the evidence; if not, it is a court matter," citing Henry v. Railroad, 76 Mo. 288.

In Warner v. St. L. & M. R. R. Co., 178 Mo. 125 (l. c. 133), our Supreme Court holds that the burden of proof in cases of injuries from the negligence or fault of a defendant is primarily upon a plaintiff to prove the negligence charged. "It is not enough to show an accident and an injury. A causal connection must be established between the accident and the negligence charged in order to make out a case for the jury."

Returning to the decision in the Warner case, our Supreme Court has further held, that failing to show direct connection between cause and effect, it is the duty of the court, as was done in that case, to take the case from the jury. Continuing, the court held that there must be a direct connection between the negligent act and the injury, and the negligence must be the proximate cause of the injury; that if the injury may have resulted from one of two causes, for one of which and not the other the defendant is liable, it is for the plaintiff to show with reasonable certainty, that the cause for which the defendant is liable, produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail of his action.

Applying these rules to the case at bar, it will be observed that this respondent was at work at a point some thirty miles distant from the directing officer, his

immediate superior, the master mechanic, Mr. Henry, located at Cape Girardeau. He looked to him for directions possibly, certainly for supplies and means with which to do his work. The duties of the respondent were, among others, to keep the fires of the engines "banked"—for that he was required to fill up the firebox with coal. It was part of his duty to clean and keep the locomotives under his charge clean. That is to say, he was not only to attend to keeping the fires in proper condition for instant work, but he was to keep the locomotives clean, in short, to clean up after his work. He had a helper under him. In a small way he was a vice-principal. He was to do his work, whether by night or by day, as the locomotives were placed. He knew he was liable to be called to his work at any and all hours and in all kinds of weather. The responsibility as well as the labor itself was with him. He had no oil, on the night of the accident, and therefore had to work in the dark, or by the light from the firebox, or not work at all. This lack of oil was not a sudden failure—he had been without it for eight or ten days before then. He had called for it, but his call had not been met. He kept at work, however, throwing in coal, feeding and banking the fire, and by his own testimony, had left coal or cinders on the floor, at least he says he supposes he did, although he manifestly cannot be sure about that; for his case must rest upon the theory that it was so dark that he could not see what was on the floor. At all events he slipped and crushed the fingers of his hand, having caught his hand between a lump of coal, weighing eight or ten pounds, which he had in his hand and was about to throw into the firebox, and the edge or rim of the machine. His whole case rests on the claim he makes that if he had had a light to work by, he would have seen the cinders or loose coal, if they caused his fall, and would have swept them off. That may or may not have been so; he might have left them there, not thinking of the danger, even if it had been

broad day, or his light have been trimmed and burning. He might have slipped on the coal or cinders even if he had seen them. He might even have had oil and not used it. There is no evidence whatever to show that he protested against having to work without a light, which is a circumstance showing that did not regard the light as vital to his safety or as indispensable for his work. When these matters of speculation interpose, and who can deny but that they may and do interpose? we are bound to look elsewhere for the "proximate cause." and to say, as a matter of law, that interposing as they do, it cannot be held that the absence of oil was the proximate cause. We cannot be even sure that the presence of the loose coal and cinders caused him to slip and fall—we are to "suppose it was there," for it was dark on the deck. The burden was on the respondent to show not only that he had not been furnished with oil for the torch, but that the injury was caused by lack of a light. [Trigg v. Land & Lumber Co., 187 Mo. 227, l. c. 234.] Assuming that the presence of the loose coal or cinders was the cause of the fall, then that was the proximate cause, and neither the court or jury are warranted in saying that if the respondent had been furnished with oil and had had a light he would have seen them, and seeing would have removed them, or would not have slipped on them. Under such a state of facts, we do not think a jury was warranted in laying the accident to the absence of oil, and the court should have sustained the demurrer to the evidence. For its failure to do so, the judgment is reversed. All concur.