B. L. LYMAN, Respondent, v. HORACE DALE, Appellant.

Springfield Court of Appeals, May 8, 1911. Motion for Rehearing Overruled June 13, 1911.

1. ANIMALS: Negligence: Proximate Cause. Defendant's servant was riding one mule and leading a high spirited mule along a public street. At a point on the street where some bricks and dirt had been placed and which necessarily narrowed the street, he met plaintiff travelling in a buggy. The mule that was being lead scared at the obstruction in the street, or the red lights placed thereon, shied sideways towards plaintiff's buggy, whipped around and got his hind leg in between the shaft and wheel of the buggy and broke the wheel. The evidence is examined and held sufficient to show that the proximate cause of the injury was negligence on the part of the servant in allowing the mule too much rope at the place where the accident occurred. GRAY, J., dissents, and holds that the evidence is not sufficient to show negligence.

Lyman v. Dale.

2. **PLEADING: Negligence: Animals.** In an action for damages on account of injury to plaintiff's buggy, plaintiff alleged, in his statement filed before a justice of the peace, "that defendant's employee on the aforesaid date was leading a wild and unruly mule along the aforesaid street in such a careless and negligent manner as to permit it to run into and against plaintiff's said buggy." *Held,* that the wild and unruly character of the mule was not the material allegation and that it was not necessary to prove that the mule was wild and unruly; that the material allegation was the charge that defendant's servant was careless and negligent in the manner in which he handled the mule. GRAY, J., dissents, and holds that the manner of handling the animal was proper when applied to anything but a wild and unruly mule, and as it was not shown that the mule was wild and unruly, plaintiff failed to prove the negligent act alleged in his complaint.

3. **PROXIMATE CAUSE: Negligence.** Proximate cause, as used in judicial decisions, signifies a breach of duty owed to a person followed by injury to him, either as the direct result of the dereliction or through its consecutive consequences and subject to the condition that there must have been sufficient probability of a breach proving detrimental instead of innocent, that, in reason, blame for the injury may fairly be imputed to the wrongdoer.

4. **ANIMALS: Negligence.** If a party negligently permits his domestic animals to be in a place where they have no right to be and while there they injure another, the owner is liable, but a party in control of such an animal at a place where he has a right to be, can only be held liable for injury caused by the animal when he is guilty of negligence in handling it.

5. **NEGLIGENCE: Rule Stated.** Negligence is always a relative term and in determining whether a party has been negligent, his act must be viewed in the light of the surrounding circumstances and the final test always is whether or not the party charged with negligence acted in the given case as an ordinarily prudent man would act in the same or similar circumstances.

6. **APELLATE PRACTICE: Evidence: Upholding Verdict.** It is the duty of the appellate court, in viewing the evidence on appeal, to give the evidence the most favorable construction consistent with sound reason, with a view of upholding the verdict.

7. **EVIDENCE: Expert Testimony: Animals: Care in Handling Mules.** In an action for damages on account of injury to plaintiff's buggy, alleged to have been caused by defendant's mule while being led, by defendant's servant along a public street, it was held that the so-called expert testimony of wit-

nesses to the effect that in their opinion the defendants servant was careless in the way he handled the mule and that he should have tied it up closer, was immaterial and should be wholly ignored, and the fact that it went in without objection in no wise added to its weight or made it sufficient. (See separate concurring opinion of NIXON, P. J., and dissenting opinion of GRAY, J.)

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED (*Certified to Supreme Court*).

*W. D. Hubbard* and *J. T. White* for appellant.

(1) The negligence alleged was leading "a wild and unruly mule" in a "careless and negligent manner." There was a total failure of proof. The mule was quite gentle. A careless manner of leading a gentle mule is not alleged. In order to recover plaintiff was obliged to prove that the mule was wild and that defendant knew it. Cathorn v. Walsh, 7 Mo. App. 588; O'Neil v. Blase, 94 Mo. App. 662. (2) Leading the mule in the manner complained of was not the proximate cause of the accident. The obstruction in the street caused the mule to shy. The length of the rope would not prevent the mule from breaking loose. The obstructions were the proximate cause. Hodges v. Railroad, 135 Mo. App. 683; Lawrence v. Ice Co., 119 Mo. App. 328; Bokamp v. Railroad, 123 Mo. App. 270; Haley v. Railroad, 179 Mo. 35; Saxton v. Railroad, 98 Mo. App. 494.

*Roscoe Patterson* for respondent.

COX, J.—Action for damages caused by a mule while being led by a servant of defendant, coming in contact with the buggy wheel of plaintiff and breaking the wheel. The case was begun before a justice of the peace where, upon trial, plaintiff recovered the sum of five dollars, and defendant appealed to the circuit court,

where, upon trial anew before the court, the issues were again found for plaintiff and his damages assessed at five dollars, and defendant has appealed.

Plaintiff was passing along Walnut street in the city of Springfield, traveling in a buggy. He met one Barker, a servant of defendant who was riding one mule and leading another. As they passed, going in opposite directions, the mule being led shied and came in contact with the front wheel of plaintiff's buggy and broke it.

The charge of negligence by plaintiff in his statement, filed before the justice of the peace is "That defendant's agent and employee, on the aforsaid date, was leading a wild and unruly mule along the aforesaid street in the city of Springfield, in such a careless and negligent manner at to permit said mule to run into and against plaintiff's said buggy." It is contended by appellant that the plaintiff, having charged the mule to be wild and unruly, he must prove that fact or fail in his action. There was no evidence in this case that the mule was wild and unruly. The evidence was that it was well broken, but was high-spirited. We do not think, however, that the wild and unruly character of the mule was the material allegation of plaintiff's cause of action. As we regard the statement the material allegation was the charge that defendant's servant was careless and ngligent in the manner in which he handled the mule.

It is also contended by appellant that defendant's servant was not shown to have been negligent and that the shying of the mule was not the proximate cause of the injury but that the proximate cause was the material in the street which caused the mule to scare.

It is hard to give a definition of proximate cause that will fit every case. About all that can be done is to define it in general terms, and then the application must be made under the facts of each particular case when it arises. The Saint Louis Court of Appeals, speaking through Judge GOODE, in the case of Lawrence v. Ice

Company, 119 Mo. App. 316, page 328, 93 S. W. 897, defines proximate cause as follows:

"As used in judicial decisions the term signifies a breach of duty owed to a person, followed by injury to him, either as the direct result of the dereliction or through its constructive consequences, and subject to the condition that there must have been sufficient probability of the breach proving detrimental instead of innocent, that, in reason, blame for the injury may fairly be imputed to the wrongdoer."

This definition has been since approved by the same court, speaking through Judge REYNOLDS in Hodges v. Railroad, 135 Mo. App. 683, l. c. 691 and 692, 116 S. W. 1131, and it is in harmony with the authorities generally. [Bokamp v. The Railroad, 123 Mo. App. 270, 100 S. W. 689; Haley v. The Railroad, 179 Mo. 30, 77 S. W. 731; Railroad v. Kellogg, 94 U. S. 469.]

The cause of the injury in this case was the shying of the mule toward the plaintiff's buggy, and its coming in contact with the wheel. To hold defendant liable it must appear that his servant Parker was negligent in handling the mule and that this negligence caused the mule to come in contact with the buggy wheel. If a party negligently permits his domestic animals to be in a place where they have no right to be, and while there, they injure another, he is liable; but a party in control of such an animal at a place where he has a right to be can only be held liable for injury caused by the animal when he is guilty of negligence in handling it. [Eddy v. Union, (R. I.), 56 Atl. 677; Dixon v. McCoy, 39 N. Y. 400; Caldwell v. Arnhein, (N. Y.), 46 N. E. 310; Crozier v. Reed, 28 N. Y. Sup. 914; Haines v. Keahon, 61 N. Y. Sup. 757.]

Negligence is always a relative term, and in determining whether a party has been negligent his act must be viewed in the light of surrounding circumstances, and the final test always is whether or not the party charged with negligence acted in the given case as

an ordinarily prudent man would act in the same, or similar circumstances.

The contention of respondent at the trial was that the mule being led was given too much rope, and was not held in as closely by defendant's servant at the time of the accident as it should have been.

After verdict it is our duty to give the evidence the most favorable construction consistent with sound reason, with a view to upholding the verdict. If we view the evidence in this case in that light we have the following facts:

The defendant's servant was riding one mule and leading another large, high-spirited mule along Walnut street in the city of Springfield. At a point in said street, at which some brick and dirt had been placed, which necessarily narrowed the street somewhat, he met plaintiff traveling in a buggy. There were red lights on the piles of brick. The mule being led was on the side next to the plaintiff and was led by a halter rope five or six feet long, the party leading it having hold at or near the end. The mule being led scared at the obstruction in the street, or the red lights, and shied over sideways towards plaintiff's buggy, whipped around and got his hind leg in between the shaft and wheel of the buggy and broke the wheel in getting it out. The evidence does not clearly show the distance between the mule and plaintiff's buggy at the time the mule scared. The party leading the mule testified on the part of defendant on cross-examination, that there was about two feet between them, but this was not binding upon plaintiff. The testimony on the part of plaintiff was that the mule was being led out at the end of a rope five or six feet long; that it shied over sideways toward the buggy, then whipped around and caught its leg between the shaft and wheel of the buggy. Evidently, if there had been but two feet between them it would not have had room to shy over toward the buggy, then whip around also, so if we take the evidence most favorable to plaintiff

the distance between them must have been much more than two feet. There was evidence, too, that he could have kept the mule closer up to him than he did.

That there should be some limit to the amount of rope given a Missouri mule in a public street of a city is self-evident. It is also clear that a man, leading a high-spirited mule through a street at a place where it is partly obstructed by an object calculated to scare horses or mules, should use greater precaution and hold the mule closer to him when meeting and passing another at such point in the street than would be required if the street were unobstructed, and nothing to call his attention to the fact that the mule would be likely to scare. What length of rope should be given a large, high-spirited mule in such a situation as described in this case cannot be fixed by us as a matter of law. To fix a limit at which ordinary care ceases and negligence begins in every case is impossible. The party leading the mule must be governed in that particular by the circumstances. He should, in all cases, use ordinary care to keep the animal under control, and we think there was sufficient evidence in this case to sustain the finding that the mule was given too much rope while passing plaintiff at the place where they met.

Did the negligence of defendant's servant cause the injury?

Plaintiff's evidence bearing on that question may be summarized as follows:

"Q. Did it shy across to your buggy? A. It shied across to our buggy. We were about as close to the south side as we could get, and it had to shy over there to get to our buggy. . . . They kind of scared sideways, of course. If they hadn't they wouldn't have gotten on my wheel. Q. Now, you didn't have a great deal of room to pass south of those mules and go on, did you? A. Not when they got to the end of the halter rope, I didn't."

156 App.—28

—Lyman. "We were going east and they went up like that, and the man was riding a mule and leading a mule at the end of a halter rein. Might not have been at the end, not a long ways from it anyway. The rein was five or six feet long I should say anyway, and the mule I noticed seemed to shy at something or other, but didn't seem particular scared. It just ran up like that and threw its left hind leg over in our shaft and the buggy, and, of course, it couldn't get out of there very easy, and consequently he tore the wheel pretty well down."

Cross-examination. "The mule seemed to be coming along very nicely but the man was leading it out there five or six feet at the end of a halter rein, and the mule kind of shied off a little bit, and, of course, I thought the man seemed to be a little careless in the way he handled the mule, and the mule put up his hind leg in over our front wheel. . . . It came up sideways-like and just whipped around over the buggy."

William Booker. Cross-examination. "I didn't see any misbehavior in the man who was riding the other mule, only he couldn't handle the mule, is all. He didn't have them up so he could handle them. I am not very much of a mule handler. He could have tied them up closer than he did. I don't think he was tied up at all. I think he was leading the mule at the end of the rope."

As stated by one witness "It came up sideways like and just whipped around over the buggy." When it whipped it threw one hind leg in between the wheel and the shaft of the buggy and broke the wheel in getting its leg out. It is common knowledge that there is not much space between the shaft and the wheel of a buggy; hence, if the mule had been held a little closer in by its master its leg would not have gotten between the shaft and wheel of the buggy when it "Shied off sideways and whipped around," and the injury would have been prevented.

We do not think a party could ordinarily be held

liable for negligence upon proof merely that he had led a mue through a street with a halter rope five or six feet long, yet under the peculiar facts of this case, when we consider that the mule was large and high-spirited and that these parties met at a point where the street was partially obstructed by piles of brick and dirt and the passage was thereby narrowed, and red lights being on the piles of brick, we think the trier of the facts would have been justified in finding that the party in charge of the mule should have anticipated that there was probability of the mule scaring at the brick and dirt, or the lights, and under the circumstances in this case he could, and ought to, have drawn the mule closer in and that his failure to do so was negligence that caused the injury.

Although this case involves but five dollars, we have given it the same careful consideration that it would have received had the amount been large. Every citizen has the right to appeal to the courts for a redress of grievances, and the amount involved in the controversy should not in any degree lessen the attention to be given his case by the court. After a careful examination of the entire record in this case we discover no substantial error, and the judgment will therefore be affirmed. NIXON, P. J., concurs; GRAY, J., dissents and asks that the case be certified to the Supreme Court, which is accordingly done.

## SEPARATE CONCURRING OPINION.

NIXON, P. J.—In my opinion, the manner of leading mules through the streets of cities when such streets are unobstructed and in their ordinary condition is quite immaterial to any issue in this case. Nor do I think the so-called expert testimony cuts any figure in the decision of this case. The condition of Walnut street in Springfield where the accident occurred was, at the time of the accident, exceptional, and by reason of the repairing being done, was at least in an obstructed and not in the ordinary condition of streets. So that the ordinary

method of handling domestic animals while leading them along an unobstructed street is wholly an irrelevant issue. At the place where the accident occurred, the street was more or less occupied so that the passageway was narrowed, by reason of dirt and piles of brick with red lights on top, all of which made the circumstances under which the accident occurred exceptional, and of which the defendant's servant must have had due notice and could readily at least have known and anticipated that he was likely to meet travelers at that point. The only question presented for our determination is whether there are any facts in the case sufficient to carry it to the court sitting as a jury. In view of the propensities of a mule, if the court sitting as a jury found that the manner of leading or managing it was negligent, in view of the peculiar condition of the place where the accident occurred, I think the court's judgment should be upheld; that the usual way of leading or managing domestic animals on a public street under exceptional conditions of the street might be considered by a court sitting as a jury as of itself evidence of negligence. In my opinion, the evidence tends to prove facts from which inferences may be reasonably drawn upholding the judgment.

## DISSENTING OPINION.

GRAY, J.—The plaintiff charged that the damages sued for were caused by defendant's servant "leading a wild and unruly mule along the street in such a careless and negligent manner as to permit said mule to run into and against the plaintiff's buggy." While the suit was commenced in the justice court, wherein technical pleadings are not required, yet it seems to me that plaintiff charged and intended to charge that the negligence consisted in failing to exercise proper care in handling a "wild and unruly mule," and that plaintiff did not intend to charge that the manner of handling the animal was improper when applied to anything but a wild and

unruly animal. The evidence showed that the animal was gentle, well broken, and was not wild or unruly, and therefore, I am of the opinion plaintiff failed to prove the negligent act alleged in his complaint.

My associates agree with me that the evidence wholly fails to show that the mule was wild and unruly, but they are of the opinion that the evidence shows it was "large and high-spirited," and that the defendant's servant on account thereof, was not justified in handling the mule in the ordinary manner.

While the testimony does show that the mule was large, I do not believe it does show that the servant was required to take any extra precaution in leading the animal. I believe the testimony shows that the mule was well broken and gentle. The evidence in the record on the point is as follows: "The plaintiff testified: 'I did not notice anything alarming about those mules. Nothing more than common.' The plaintiff's brother testified: 'The mule seemed to be coming along very nicely.' "

The defendant testified: "I had owned these mules about a year before this happened. They were well broken. I have driven them to everything. I have driven them to the carriage, to the plow and over the city. The mules were not wild, they were spirited mules." The defendant's servant in charge of the mules, testified: "I am fifty years old. I have drove lots of mules and teams. I had been hauling water to the engine with those mules on that day and for several days. The mules were not difficult to manage only when the steam would pop off, or the whistle blow. I would drive them right up to the engine and they would stand there. I worked for Mr. Dale on his farm. I have known those mules ever since he got them. They were pretty well broke mules. They were a little high lifed mules, but they were well broke for young mules."

I can see nothing in this testimony relating to the disposition and character of the mules that required defendant's servant in taking them along the highway, to

exercise extra care on account thereof. The testimony
does not show that they were unusually high spirited,
but in the language of the witness "a little high lifed."

On the day of the trouble defendant's servant had
been driving the team to a wagon hauling water to an
engine about four miles east of the city; that when the
day's work was done, he unhitched from the wagon,
leaving the harness on the mules, and got on the back of
one of them, and started to the city, where the mules
were kept, leading the other by an ordinary halter. While
passing west on Walnut street, he met the plaintiff, who
was traveling east, driving a horse hitched to a buggy.
Walnut street had been paved with brick, and a ditch or
excavation had been opened on the north side of the
street. The brick had been removed and piled along the
street, and the dirt removed in making the excavation
was also piled along the street, either next to the walk
or between the ditch and the brick. The plaintiff met
the servant leading the mule while passing along the
part of the street so being improved. It is not claimed
that the mule shied when it first came to the obstruction,
and the evidence affirmatively shows that it was passing
along apparently paying no attention to the obstruction,
until it shied and came in contact with plaintiff's buggy.

The contention of respondent at the trial was, that
the mules should have been necked together, and that it
was negligence to lead an ordinary mule along the street
with a halter. The plaintiff testified: "Q. Do you
know the customary manner of managing mules when
they are being led over the streets   A. I don't know
what lots of people would do, but I know what I would
do with them. I would neck them together so they could
not spread all over the street.   Q. How was he leading
this mule? A. At the end of a halter rope.   Q. How
long was that rope?   A. About five feet the best I could
tell."

The plaintiff's brother testified: "I have had some
experience in handling mules. In a place where you

are likely to have any difficulty you neck them right up short together. No man can handle a mule of any size by halter rein."

The above is substantially all the evidence offered by the plaintiff in chief. When plaintiff closed his case, not a word of testimony had been offered to prove that the mule was a "little high-lifed." The trial court overruled the demurrer to the testimony, and thereby declaring that plaintiff had made a case.

A careful reading of the opinion of my brethren will disclose that they are of the opinion that the court erred in overruling the demurrer, and that the court should, at the close of all the case, found for the defendant, had it not been for the evidence of defendant and his witness, that the mule was "high spirited."

I have already called attention to the fact that the testimony only shows that the mule was a "little high-lifed" and was really not guilty of the charge made against him in the majority opinion.

I recognize the fact that the failure of the defendant to stand on his demurrer, authorized the court to render judgment on all the evidence. I have only mentioned the action of the court on the demurrer to show that the court had a wrong idea of the case and tried it on a wrong theory of the law.

On cross-examination of the defendant, the plaintiff sought to show that the mule was given five feet of rope, and that it was error to give it more than four. The evidence of the witness was, that four feet would be all right, and that five or six feet would be too much. There was no testimony that the mule was given five feet of rope. The witnesses testified that the halter strap was five or six feet long. This is no evidence that it was more than five. The evidence shows that the man had hold of the rope at or near the end, and therefore, if we are to measure plaintiff's testimony by technical rules, it wholly fails to show that the mule was given an improper amount of rope..

I fully agree with the majority opinion that the so-called expert testimony should be wholly ignored. The witnesses did not attempt to say what was proper under the particular circumstances of the case. And the testimony of plaintiff and his witness that a man in taking a domestic animal, like a mule or a horse along a street, must neck it to another animal, and must not attempt to handle it with a halter, is so ridiculous and absurd and contrary to the common knowledge of every one, that it should be entirely rejected. And as said by the Supreme Court of Wisconsin in Baxter v. Railroad, 80 N. W. 644: "Mere opinion evidence, at best, is to be received and scrutinized with the greatest care. It is, ordinarily, the most uncertain kind of evidence that can be produced, and falls to the ground as utterly worthless when inconsistent with common sense. The jury must pass upon the probabilities, and unless the opinion relied on is within the scope of reason and common sense, it should not be regarded at all." And as said by our own Supreme court, in Weltmer v. Bishop 171 Mo. 110, 71 S. W. 167. "Courts are not such slaves to the forms of proceedure as to surrender their own intelligence to an array of witnesses testifying to an impossibility. They are not required to give credence to a statement that would falsify well-known laws of nature though a cloud of witnesses swear to it."

The leading of domestic animals along a street by halters has been the universal practice so long that courts will not regard testimony of so-called experts to the contrary. In Post v. Ry. Co. 121 Mo. App. 562, 97 S. W. 233, the plaintiff, while cutting weeds with a scythe on the right of way of defendant, was injured by the scythe failing to cut a weed, and pulling it into his face. The work was performed on the side of a hill, and the plaintiff claimed a scythe was an unsuitable tool to use to cut weeds in such a place. In sustaining a demurrer to his testimony, the court said: "A scythe is a simple tool, used by mankind from remote ages to the

present for the cutting of grass, grain and weeds, and it would be absurd to treat as an issue of fact the propriety of its use for such purposes on any kind of ground where the mower could stand. The use of such simple, universal tools, being a matter of common knowledge about which reasonable minds do not differ, are a subject of which courts may take judicial knowledge."

The fact that the so-called expert testimony went in without objection in no wise adds to its weight or makes it sufficient. [St. Louis v. Roche, 128 Mo. 541, 31 S. W. 915; Boggs v. Laundry Co., 171 Mo. 282, 70 S. W. 818; Thompson on Trials, sec. 691.]

The real question in this case is: Is a defendant liable because his servant rode one mule along the street, and led another by an ordinary halter, simply because he met a buggy in a portion of the street that was being improved, and the mule that was being led shied at the improvement and came in contact with plaintiff's buggy. The evidence wholly failing to show that the mule had any bad habits, or was of a bad disposition, or that it ever shied at anything of the kind before, notwithstanding it had been used for some time upon the streets of a city.

A case on all-fours was decided by the Supreme Court of Rhode Island, and is reported in the 56 Atl. 677. In that case the court said: "The plaintiff was riding in a buggy along the street in the city of Providence. At the same time a servant of the defendant in charge of two horses, riding one and leading the other by a halter, was proceeding along the street. When the plaintiff drove alongside the horses, the led horse suddenly wheeled and kicked the buggy, throwing the plaintiff out and injuring him. The decision of the question whether a domestic animal is or is not rightfully in the place where it inflicts an injury complained of is determinative as to the necessity of proof of knowledge, on the part of the owner of a vicious propensity of the animal. The leading of horses in the street is an every-

day occurrence. It is the common practice of ordinarily careful and prudent men. The horse, being in charge of an attendant and led by a halter, was rightfully in the street. There was no evidence that he had ever before shown any vicious propensity or had been known to kick. Under such circumstances, the defendant in the absence of testimony showing negligence in the management of the horse while in the street would not be liable."

My brethren say: "There should be some limit to the amount of rope given a Missouri mule in a public street of a city is self-evident." With this statement I fully agree without limiting its applicaion to a "Missouri" mule. But my contention is, that the undisputed evidence in this case shows that the mule was led by a halter strap of the ordinary length. If there had been any testimony that the mule was wild and unruly, and that defendant's servant on account thereof might have expected trouble, a different case would be presented. The servant was doing nothing except leading the animal along the street in the same manner it has been led for a time so long "that the memory of man runneth not to the contrary." And our courts hold under such circumstances there is no negligence. [Wendall v. Railroad, 100 Mo. App. 556, 75 S. W. 689.]

It seems to me that plaintiff wholly failed to make a case, and that we should follow the decision of the Kansas City Court of Appeals in Post v. Railway, supra, and hold that the use of a halter to lead a domestic animal along the street, is such a common practice that it is a matter about which reasonable minds do not differ.

There is another reason why, in my judgment, the judgment should be reversed. There is not a word of testimony in the case tending to prove that leading the mule by a halter strap five feet long, caused the damage. The burden was upon the plaintiff, not only to show that his buggy was damaged and the defendant was negligent, but to show by the preponderance of the evidence

that his damages would not have been suffered, except by the negligent act of the defendant. [Brown v. Railroad, 65 Mo. App. 162; Warner v. Railroad, 178 Mo. 125, 77 S. W. 67; Harper v. Terminal Co. 187 Mo. 575, 86 S. W. 99; Breen v. Cooperage Co., 50 Mo. App. 202.]

It is apparent that in order to prove that the damage was caused by the servant leading the mule by five feet of rope instead of four, the distance from the man riding the other mule to the buggy, must be determined. If the mule the servant was riding and the buggy were only six or seven feet apart, then we know from our knowledge of the length of a large mule, that it could have gotten its foot behind the front part of the front wheel of the plaintiff's buggy, even if it had been "necked to the other mule."

My associates say on this point: "The evidence does not clearly show the distance between the mule and plaintiff's buggy at the time the mule scared." This is true if we reject the plaintiff's testimony on that point. On cross-examination of the defendant's servant, he testified that the buggy was about two feet from him. My associates dispose of this testimony by stating that it was a voluntary statement on the part of the witness and was not responsive to any question asked him. With all due respect to them, the record does not bear out the statement. The testimony appears in narrative form with but very few of the questions shown. The testimony of the witness appears at the end of a pargraph and the question that elicited the answer is not given. But if the testimony is stricken it only leaves plaintiff's case in a worse condition. Without this testimony, the whole matter is left to conjecture and speculation.

The plainiff testified as follows: "They kind of scared sideways, of course. If they hadn't they wouldn't have gotten on my wheel." If this testimony is accepted as true, then both mules shied toward plaintiff, and in that case, the length of a halter strap might have nothing to do in causing the damage.

Lyman v. Dale.

The evidence does not show the width of the street or how much of the street was occupied by the obstruction. The plaintiff speaks of meeting defendant's servant "in a crowded place." The plaintiff's brother testified: "The mule kind of shied off a little bit. It came up sideways like and just whipped around over the buggy." Upon what theory it can be said that this testimony shows that if the mule had been led by a rope four feet long, the accident would not have happened, I must confess I am unable to understand. I am also unable to see the logic of my brethren on this point stated by them as follows: "It is common knowledge that there is not much space between the shaft and the wheel of a buggy; hence if the mule had been held a little closer in by its master, its leg would not have gotten between the shaft and the wheel of the buggy, when it shied off sideways and whipped around."

If the evidence showed that the distance between the men riding the mule and the wheel of the buggy, was so great, that when the mule had pulled away from its master as far as the halter strap would permit, and then whipped around, it was just able to reach the wheel of the buggy, there would be some weight in their statement. But if the mule the servant was riding was eight or nine feet from the buggy, and was being led by a halter strap two feet long, and it shied away from its master as far as it could and whipped around, its own length added to the two feet of halter strap would have reached the buggy.

I understand that questions of fact are for the trial court in actions at law. But I also understand that it is the right and duty of the appellate court to reverse a judgment that is without substantial evidence to sustain it. [Milan v. Freeman, 136 Mo. App. l. c. 117, 117 S. W. 644; Bates Co. Bank v. Railroad, 98 Mo. App. 330, 73 S. W. 286; Spiro v. Transit Co., 102 Mo. App. 250; 76 S. W. 684; Haviland v. Railroad, 172 Mo. 106, 72 S. W. 515.]

When the evidence leaves the question whether plaintiff's injury was the result of the negligent act of the defendant to mere conjecture, the trial court has no right to render a judgment against the defendant. As said by Judge MARSHALL in Warner v. Railroad, supra: "If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action."

While the amount involved is small, the legal principles announced in the majority opinion, are far reaching. If this defendant is liable for the damage to plaintiff's buggy, then farmers and other persons passing through the country, must cease to follow the long accustomed practice of leading horses and mules behind their wagons by an ordinary halter strap, while passing along the highway. In any event, the opinion of the majority makes it a question for the jury in every case where a domestic animal is a little high lifed" and shies to one side and causes damage while beind led by an ordinary halter. And this is true where the animal is well broken and the evidence fails to show that it had ever shied at an object before.

I believe the plaintiff failed to make a case, and that the judgment should be reversed. I further believe that the correct rule is declared by the Kansas City Court of Appeals in Post v. Railway, supra, and that the opinion of my associates in this case is in conflict with that case, and I therefore ask that the cause be transferred to the Supreme Court.