LAWRENCE, Respondent, v. HEIDBREDER ICE COMPANY, Appellant.

St. Louis Court of Appeals, April 10, 1906.

1. **MASTER AND SERVANT: Safe Appliances: Contributory Negligence: Jury Question.** In an action by an employee against his employer for damages incurred by using a defective machine, where the defense was that the plaintiff was guilty of negligence which contributed to the injury because he must have known the manner in which he used the machine was dangerous and because he chose a dangerous rather than a safe way to use it, and where the evidence showed that he used the machine in the manner in which it was usually used in the factory, it was a question for the jury whether he was guilty of contributory negligence.

2. **DAMAGES: Proximate Cause: Question of Fact: Question of Law.** Whether an act of negligence was the proximate cause of an injury is an issue of fact if contrary opinions may arise on the evidence; if not, it is a question of law.

3. **MASTER AND SERVANT: Safe Appliances: Notice of Defect to Master.** When an' employee informs a foreman, charged with the oversight of machines and tools with which the employee works, that an implement the employee handles is out of repair, specifying the defect, and is ordered to continue using it, the master is wanting in ordinary care to provide safe appliances and is liable for harmful results by reason of the use of the defective machine, unless the risk is such that a prudent person would not undertake it.

4. **DAMAGES: Proximate Cause: Probable Consequences.** The proximate cause, as used in judicial decisions to fix liability for damage, signifies a breach of duty owed to a person followed by an injury to him, either as the direct result of the breach of duty, or the result of such breach in a natural and continuous sequence unbroken by an independent cause, subject to the condition that there must have been sufficient probability of the breach proving detrimental instead of innocent.

5. ——: ——: **Necessary Result.** In order that one act may be the proximate cause of another, it is not essential that the effect should have resulted necessarily from the act and events of a causative influence may intervene between the initial act and the final result without displacing the initial act as the

proximate cause. Even where the injured party himself did an act which was influential in producing his injury, if his act was the natural consequence of another person's tort, from which the injury followed, the other person's tort is the proximate cause.

6. ——: ——: **Laws of Physics.** In order that a wrong may be the proximate cause of an injury, it is not necessary that the injury should result from the wrong according to the laws of physics. It is enough if it results according to the laws of human nature.

7. ——: ——: Where a servant used a defective machine and was injured by reason of the defect, and where his manner of using the machine contributed to the injury, but where that manner of using it was the natural consequence of the conditions under which he was obliged to use it, and he was not negligent in so using it, the defect in the machine was the proximate cause of the injury and not his manner of using it.

8. ——: ——: **Reasonable Consequences.** No rule can be fixed defining what consequences may be expected to flow from a negligent act so as to make the negligent one liable. Circumstances largely determine each case. Designating certain general limits, it may be said that the negligent party is not excused from liability because the *particular* injuries which resulted from his act could not be anticipated; nor on the other hand, can he be held liable when *no sort* of injury resulting from the act could have been anticipated, although injurious consequences which can not be foreseen sometimes follow an act.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*McKeighan, Wood & Watts* and *William R. Gentry* for appellant.

(1) The evidence of plaintiff and all his witnesses, as well as that of the defendant's witnesses, showed conclusively that the broken rivet was not the proximate cause of the injury to the plaintiff's finger. There was no evidence tending to show any negligence in not providing any appliance to keep the can from slipping, hence that was properly excluded from the jury, the sole allegation of negligence, therefore, upon which the plaintiff relied being that the defendant was neg-

ligent in maintaining the machine with the broken rivet. The plaintiff could not recover on that allegation, unless the testimony showed, or tended to show, that that was the proximate cause of the accident. Plaintiff's own testimony showed clearly that the absence of the rivet was not the proximate cause of the injury. Hence the demurrer should have been sustained. Henry v. Railroad, 76 Mo. 293; Mathiason v. Mayer, 90 Mo. 585, 2 S. W. 834; Halloran v. Union I. & F. Co., 133 Mo. 470, 35 S. W. 260; Saxton v. Railroad, 98 Mo. App. 495, 72 S. W. 717; Killian v. Railroad, 86 Mo. App. 473; Thompson v. Railroad, 140 Mo. 125, 41 S. W. 454; Railroad v. Railroad, 78 Mo. App. 245; Breen v. Cooperage Co., 50 Mo. App. 202; Hudson v. Railroad, 101 Mo. 34-35, 14 S. W. 15; Haley v. St. Louis, 179 Mo. 35, 77 S. W. 731; Dolan v. Iron Co., 66 App. Div. 545; Harper v. Railroad, 187 Mo. 575, 86 S. W. 99.    (2) The plaintiff was guilty of negligence which directly contributed to cause his injury. When he had dumped the machine, he undertook to right it up, and in doing so, was guilty of negligence in placing his hands in the position where he placed them. A six-year-old child could have foreseen what the result must necessarily be. Where there is a safe way and a dangerous way of doing work, and the servant voluntarily does it the dangerous way instead of the safe way, when it is open to him, he is guilty of negligence in making such choice, and cannot recover for injuries so received. Montgomery v. Railroad, 109 Mo. App. 88, 83 S. W. 66; Moore v. Railroad, 146 Mo. 572, 48 S. W. 487; 1 Bailey on Pers. Inj., sec. 1121.

*William D. Sumner* for respondent.

That by the testimony of plaintiff and Thomas Molloy it was conclusively shown that when a can would slip forward by reason of the bar attached to the top of said dumper failing to hold said can in position when

operating said dumper forward, the proper and custom-
ary way to right up said dumper into its former posi-
tion, was to take hold of the bottom of said dumper
and press down on same, exactly as plaintiff did at the
time he was injured. In support of the above reasons
showing why the demurrer to the evidence was properly
overruled, plaintiff cites the following cases: Hamilton
v. Mining Co., 108 Mo. 372, 18 S. W. 977; Conway v.
Iron Works, 62 Mo. 35; Stephens v. Railroad, 96 Mo.
257, 9 S. W. 589; Paterson v. Railroad, 76 Penn. St.
389; Nickols v. Nickel Plate, 126 Mo. 55, 28 S. W. 991;
Omelia v. Railroad, 105 Mo. 520.

STATEMENT.—Defendant appealed from a judgment
in an action to recover for an injury sustained by plain-
tiff while employed by defendant, an incorporated com-
pany engaged in the manufacture of artificial ice. The
negligence charged is putting plaintiff to work on a
machine which was broken and not reasonably safe.
The ice was manufactured in blocks of about two hun-
dred pounds weight frozen in square cans. The cans
with the blocks of ice within were lifted with an over-
head crane from the tank where the ice was frozen,
swung over a bathing tank of hot water three feet away,
submerged in the hot water for a moment to melt the
ice blocks enough to loosen them in the can, and then
deposited on an implement called a "dumper." The
workman stood behind this implement and by pushing
on the top of the can with his hand, tilted the dumper
from an upright to a horizontal position; whereupon
the block of ice slipped out of the can and glided down
a chute into the storage room. The record contains
scanty evidence regarding the dimensions, shape and
operation of the dumping implement, and some of it, as
reported, is unintelligible to one not familiar with the
construction and operation of the dumper. Two cuts
of the machine are printed in defendant's brief, which

depict it in a general way; though plaintiff's testimony is that the one he worked with was in several particulars unlike the one shown in the picture. We gather from the cuts and the testimony that the machine has a square or oblong wooden bottom like the top of a small table, and that from two corners of this bottom rise wooden arms or standards, something as the legs of an upturned table do; that five iron bars about twelve inches long, one inch wide and a quarter of an inch thick stretch like bed-slats, from one arm to the other at regular intervals and are fastened to the arms by iron bolts or rivets. On the day plaintiff was hurt, the topmost bar of the dumper he used was detached at one end, the rivet having broken so the loose end of the bar had a play of an inch or so. Early in the morning plaintiff called the attention of the foreman of the establishment to the loose bar, but was told by him that it would hold all right and to continue working with the machine as it was until he (the foreman) had it fixed. Plaintiff went on with his work without mishap until early in the afternoon, when, as he was in the act of dumping a cake of ice, the loose end of the bar swung out several inches and the ice caught against it and was held in the can, but protruding about four inches. The can itself had slipped forward on the dumper four inches or more. When the ice caught on the bar, plaintiff, who was standing at the end of the dumper, took hold of the upper edge of the wooden bottom and pulled upward and backward on it, thereby raising the machine toward an upright position. The dumper is described as having legs three feet high, but they are not shown in the cuts; and it is said that when in use the legs were thrust through the floor so that the back, or slatted part, was even with the floor when the ice was dumped. An impression is given that the dumper turned from an upright to a horizontal position on an axle, though this is not stated. At any rate, as plaintiff drew the machine

upward, the can of ice slipped suddenly, and falling on the bottom of the dumper caught his fingers and mashed them. As frozen, a block of ice lacks several inches of being as tall as the can and hence does not fill the can to its mouth. But, as said above, on the occasion in question, the block had emerged several inches from the can before catching on the loose bar. Plaintiff testified that as he raised the dumper the ice fell to the bottom of the can, thereby causing the can, which had slipped forward, to "jump" down on his fingers. One of the dumpers in use in the factory was exhibited to the jury at the trial and its operation illustrated. That dumper had an iron rod across the under surface and near the upper edge of the wooden bottom, with ends projecting beyond the sides of the bottom. It was the contention of the defendant that, to right the dumper, plaintiff should have grasped the ends of the rod, which afforded a safe hold, instead of lapping his fingers over the edge of the bottom and exposing them to injury by the drop of the can of ice. The testimony for the plaintiff was that the machine he worked with had no rod across the bottom. For the defendant it was testified that the loosened bar had nothing to do with the can's slipping forward when plaintiff tilted the machine to dump the ice, but that this often happened on machines in good order. The first of the following cuts, which are taken from defendant's brief, shows a dumper in an upright position; the second, as the dumper which hurt plaintiff looked when horizontal.

FIG. 1.—Showing dumper and ice can in upright position.

B—Back of dumper.

N—Bottom of dumper.

H—End of iron bar on bottom.

D—Point where rivet was out.

C—Bar which slipped because of absence of rivet.

FIG. 2.—Showing dumper and ice can after being dumped.

B—Back of dumper.

C—Bar which slipped because of absence of rivet.

D—Point where rivet was out.

N—Bottom of dumper where plaintiff took hold to right it up.

H L—Ends of iron bar on bottom.

Plaintiff's fingers extended over the bottom at N into the space between N and the ice can.

GOODE, J. (after stating the facts).—1. The proposition is advanced that defendant should have been ruled guilty of contributory negligence. This proposition rests on two assumptions regarding the facts. The first is that the plaintiff, unless he was acting thoughtlessly, was bound to know the can of ice would fall as he raised the dumper and would mash his fingers if they were clasped over the edge of the bottom. But this is not obviously true on the present record and with the light we have about the operation of the machine. Plaintiff's testimony is that the ice suddenly slipped back into the can and the can "jumped" on his hand. There is much testimony, too, that the method adopted by the plaintiff for raising the dumper was the one constantly used in the factory; and, of course it would not have been if the can, in descending, always caught the operative's fingers. It was in testimony by defendant's president that cans frequently slipped on dumpers in perfect condition; and it is out of reason to say they would have been righted in the manner plaintiff used when hurt, unless the operation could be performed without injury to the hand. The cuts of the ice-machine show the bottom of the can coincided in size with the bottom of the dumper; but this was not true, as appeared from testimony and the exhibition of the machine to the jury and to this court on the appeal. The framework was extended considerably beyond the can and a workman's fingers, though lapped over the bottom of the dumper, would not necessarily be caught by a descending can, and might have been caught in this instance in consequence of the can jumping. Moreover according to the evidence for the plaintiff, it was possible to raise the dumper as he did, without letting the fingers remain over the edge until a can which had slipped forward, slipped back. The hand could be withdrawn in time to escape injury. It would

be improper for this court to say, on the facts before it, that plaintiff's fingers were bound to be caught.

The second assumption in support of the proposition that plaintiff was clearly guilty of contributory negligence, is that he chose a dangerous way to right the dumper when there were safe ways. One of the supposed safe ways was to take hold of the ends of the iron rod projecting beyond the sides of the bottom. This argument is answered by the testimony that there was no rod on the machine which hurt plaintiff. But if there was no rod it is said he should have taken hold of the can near the top and, by raising on it, have righted the dumper. This argument is answered by testimony that the method plaintiff adopted was the usual and best one, and by other testimony that the machine could not have been raised by lifting on the can of ice in the position it was in when plaintiff undertook to right the machine. These matters were for the jury, as reasonable men might draw different conclusions about any of them proving contributory negligence.

2. We are asked to hold the lower court erred in letting the jury pass on the issue of whether or not the loose bar on the dumper was the proximate cause of the injury, instead of holding there was no evidence to show it was. Whether an act of negligence was the proximate cause of an alleged damage, is an issue of fact if contrary opinions may arise on the evidence; if not, it is a court matter. [Henry v. Railroad, 76 Mo. 288.] In a case like this one, some other essential facts ought to be found preliminary to the decision, by either court or jury, of the question of proximate cause. These facts are, first, that the machine with which the plaintiff was required to work was not reasonably safe; second, that the defendant had failed to exercise ordinary care to furnish a reasonably safe machine, and, third, that the machine was not so dangerous that a person of ordinary prudence would have refused to use it. An

issue regarding the third of these conditions of liability was framed by the instructions given to the jury and was found in the present plaintiff's favor. This finding precludes denying plaintiff relief merely because he used the dumper when aware that it was out of order. Unless it was too dangerous to be handled, his knowledge of its condition is not a defense. [Minnier v. Railroad, 167 Mo. 99, 66 S. W. 1072.] We ruled above that it was proper for the jury to say whether he was negligent in his mode of using the dumper, thereby contributing to cause the accident; and as the jury found the issues for him, it must be assumed in considering the appeal, that he was blameless. Therefore, it remains only to see if the defendant was to blame; or rather, whether the evidence warranted the jury to find it was. We must keep in mind the fact that plaintiff complained to the foreman of the broken rod, and was ordered by the latter to continue using the dumper, who at the same time assured plaintiff that the bar would hold until repaired. This circumstance would have gone far toward proving the plaintiff did not assume the risk of injury from the loose bar, if that defense had been raised; but it was not, and we need say nothing about it. The point of moment just here is, that the complaint to the foreman and the latter's reply, prove lack of proper care by defendant to furnish plaintiff a reasonably safe machine, if, in truth, the machine furnished was not reasonably safe. When an employee informs a foreman charged with the oversight of machines and tools, that an implement the employee handles in his work is out of repair, specifying the defect, and is ordered by the foreman to continue using it, liability for harmful results is thrown on the proprietor, unless, as said, the risk ought not, in prudence, to have been taken. [Ill. Cent. R. R. v. Creighton, 63 Ill. App. 165.] It thus will be seen that the vital preliminary question in the case, as in all similar litigation,

Lawrence v. Ice Co.

is whether the dumper was reasonably safe; for the primary duty of a master is to be careful that an appliance he requires a servant to work with shall not endanger the servant beyond the usual perils incident to the work. [Minnier v. Railroad, supra.] At the trial of the present case the question of the safety of the machine was not submitted to the jury in any of the instructions, and, of course, there was no finding on it. But neither is any point made against the verdict on this ground; therefore, it is fair to presume the defendant conceded the dumper was not reasonably safe and relied on other defenses than that it was. We shall indulge this presumption in considering the proposition that the detached bar could not have been, as charged, the proximate cause of the casualty. The defendant contends the loose bar did no harm beyond hindering the progress of the ice from the can and had no causal connection with the injury; which was due to lifting the dumper in such a way that the force of gravity was bound to bring the can of ice down on his fingers. Wherefore, it is argued that plaintiff's own act intervened between the obstruction of the ice by the broken rod and the hurt to his hand, and became the proximate cause of the hurt. In considering this theory we must remember the jury found plaintiff was not guilty of contributory negligence, thereby finding that raising the dumper with his hand over the edge of the bottom was not a careless act; a finding we have held there was evidence to justify and, hence, must accept as true. Now if plaintiff's lifting the machine as he did was not a culpable act, the inquiry is whether it can be held to have been the proximate cause of his injury.

The proximate cause of an event has been defined as that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which it would not have occurred.

[1 Shearman & Redfield, Negligence (5 Ed.), sec. 26, citing Wharton, Negligence, sec. 3; Oil Creek Ry. v. Keighron, 74 Pa. St. 320; Mutual Ins. Co. v. Tweed, 7 Wall. (U. S.) 52; Thomas v. Winchester, 6 N. Y. 397, and other cases.] The phrase "proximate cause" is the name of a legal doctrine used to fix liability for damages, and in meaning is akin to, if not identical with, what is called in logic the efficient cause. As used in judicial decisions the term signifies a breach of duty owed to a person, followed by injury to him, either as the direct result of the dereliction or through its consecutive consequences, and subject to the condition that there must have been sufficient probability of the breach proving detrimental instead of innocent, that, in reason, blame for the injury may fairly be imputed to the wrongdoer. Can plaintiff's injury be said to have followed from the loose bar in natural and consecutive sequence? On this point we observe that to constitute one act the proximate cause of another, it is not essential, according to the great weight of authority, that the supposed effect should have resulted of necessity from the act—in other words, have been inevitable. [Clifford v. Railroad, 9 Colo. 333; Ballou v. Farrum, 11 Allen (Mass.) 73; Dickson v. Hollister, 123 Pa. St. 421.] Events of causative influence may intervene between the initial act and the final result, without displacing the initial act from the position of proximate cause, if the intermediate events themselves were natural sequences of the initial act. Several causes frequently conspire to bring to pass a given effect, but the real and efficient cause is the original impulse which set the other factors in motion. [Seckinger v. Mfg. Co., 129 Mo. 590, 31 S. W. 957; McDonald v. Snelling, 14 Allen 296.] To speak in terms apposite to an action sounding in tort, if it appears the injury would not have happened but for the defendant's tort, he often will remain liable regardless of intermediate

consequences. [Weber v. Ry. Co., 12 N. Y. App. Div.
512.] It is when a new cause intervened which was
not set in motion by the primary cause, but originated
independently and acted effectively, that the primary
act ceases to be regarded as the proximate cause. [Davis
v. Garrett, 6 Bing. 724; Harrison v. Berkley, 1 Strobh.
(S. C.) L. 525; Baltimore, etc., Ry. Co. v. Reaney, 42
Md. 137; East Tenn., etc., Ry. Co. v. Lockhart, 79 Ala.
315; Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469.]
And this is true when the injured party himself did
an act which was influential in producing the injury,
but his act was the natural consequence of another
person's tort. [Hill v. Ry. Co., 44 Fed. 248; Watson,
Personal Injuries, sec. 75 and citations.] Nor need
the injury result from the defendant's wrong according
to the laws of physics. It is enough if it results accord-
ing to the laws of human-nature; as is shown by the oft-
cited case wherein it appeared that the defendant
threw a lighted squib so as to endanger an individual
and the latter, to save himself, threw it where it en-
dangered another; and so through several throwings,
until it exploded and hurt the suing party. Under these
circumstances the defendant who wrongly threw the
squib in the first place, was held liable for the harm
finally done, because the intervening acts of the en-
dangered persons were for self-preservation. [Scott v.
Shepherd, 1 Smith's Lead. Cas. (9 Ed.), 737.] And
it is sufficient, too, that the injury resulted from the
consequences of the primary wrong according to the
laws of brute-nature; as where a party had negligently
permitted his horse to stand unhitched in the street
and it became frightened by the negligent act of an-
other person, ran away and injured a third person, the
owner's act of leaving the horse unhitched was held
to be the proximate cause of the injury; a ruling that
looks extreme. [Illidge v. Goodwin, 5 C. & P. 190.]

Now, in the present case, if plaintiff had suffered the dumper to rest on the floor after the broken rod had stopped the ice from slipping out of the can, he would have escaped injury. But it was plaintiff's duty to dump the ice. He was employed to do that very work and required to do it with the machine he was using, with its loose bar. He could not continue the work without adjusting the bar so the cake of ice would leave the can. To do this it was necessary, or convenient, to raise the dumper; and this he did in a way found to have been proper. Hence, though it is obvious that raising the dumper contributed to the injury, the raising followed as a natural sequence from the obstruction offered by the loose bar; which obstruction was a natural result of defendant's negligence in requiring plaintiff to work with the machine in that condition. If the jury found rightly plaintiff was not negligent, then his intervention was morally coerced by defendant's neglect.

The natural and consecutive connection between a defendant's breach of duty and a plaintiff's injury having been established, it goes far toward proving that blame is imputable to the defendant for the injury, but we think is not always conclusive of that question; because, from a dereliction, some consequence may flow in natural and unbroken sequence, so extraordinary that it could not possibly have been anticipated or guarded against. The law does not hold a person responsible for every consequence of a breach of duty even though no reasonable man would have expected any injury whatever to result from the breach. Several rules of liability have been prescribed, only to be shattered by novel accidents; thus demonstrating that the mind is unable to conjecture all the harmful results which may flow from a delinquent act and flow from it in such natural sequence that, on a presented case, it can be pronounced the wrongdoer was to blame.

Hence text-writers and courts have declared no rule for
the ascertainment of proximate causes, which will be
generally applicable, can be devised, and that the ques-
tion must be solved in each case on the particular facts
instead of on principle. [Mutual Ins. Co. v. Tweed, 7
Wall. 49; Page v. Bucksport, 64 Maine 53; Harrison
v. Berkley, 1 Strobh. L. 548; Beven, Negligence, 75;
Watson, Personal Injuries, sec. 26.] The rule followed
by some decisions is that the defendant should be held re-
sponsible for any damage due to his wrongful act with-
out regard to the possibility of anticipating that it
would prove at all harmful. [Ehrgott v. New York,
96 N. Y. 264.] This is opposed to the great weight of au-
thority. Another rule is that a defendant should not
be held responsible for any damage except such as, by
reasonable foresight, he could have foreseen to be the
probable consequence of his act. [Flatles v. Railroad,
35 Iowa 191; Ill., etc., Ry. Co. v. Phelps, 29 Ill. 447.]
And, again, that he should be made responsible for any
consequence known to common experience usually to
follow the wrongful act. [Pittsburg, etc., Ry. Co. v.
Taylor, 104 Pa. St. 306; Sheridan v. Bigelow, 93 Wis.
436.] These rules are stated in 1 Shearman & Redfield,
Negligence (5 Ed.), sec. 28. The learned authors ap-
proved of none of them and offered instead the rule
"that a person guilty of negligence should be held re-
sponsible for all the consequences which a prudent and
experienced man, fully acquainted with all the circum-
stances which in fact existed (whether they could have
been ascertained by reasonable diligence or not) would,
at the time of the negligent act, have thought reasonably
possible to follow, if they had occurred to his mind."
Through all the rules supported by any considerable
weight of authority, runs the thought that for the de-
fendant to be answerable, it must appear that, in reason,
he ought to have expected harm to result from his con-
duct. We consider it a fallacious theory that a party

should never answer for damages due to his breach of duty unless he could have anticipated the particular injury which occurred; for this rarely can be done. See Hoepper v. Hotel Co., 142 Mo. 378, 44 S. W. 257, a case essentially like the one at bar. Neither do the majority of cases sanction such a doctrine. Nor, on the other hand, would it be proper to make him answerable for an injury when none could have been anticipated; though such a consequence does, in the working of nature, happen now and then. Without striving to lay down a general principle for the solution of this difficult problem, and speaking only with reference to the case in hand, we hold that as the defendant required the plaintiff to work with a machine which was not reasonably safe, assuming that it was not, defendant, in reason, ought to have known he might be hurt; for defective machinery is the prolific cause of injuries to employees. It is not essential that defendant should have anticipated the particular mode in which the accident happened.

We have discussed the question of proximate cause for the reason that it was presented by counsel as the controlling one in the case. In our opinion the important question relates to the safety of the machine and plaintiff's freedom from contributory negligence.

The judgment is affirmed. All concur.