L. E. BOWMAN, PLAINTIFF IN ERROR, v. ANNA I. MOORE, DEFENDANT IN ERROR.—167 S. W. (2d) 675.

Kansas City Court of Appeals. December 7, 1942.

*Fred F. Wesner* for plaintiff in error.

*Gayles R. Pine* and *Vance Julian* for defendant in error.

CAVE, J.—This is an action for damages for personal injuries resulting from an automobile collision. Anna I. Moore was plaintiff below and L. E. Bowman and John W. Dunfee were co-defendants. The cause was tried to a jury in Bates County, resulting in a verdict and judgment for plaintiff and against both defendants in the sum of $2000. Defendant Dunfee did not file a motion for new trial. Defendant Bowman filed such a motion, which was overruled, and he perfected appeal to this court, which appeal was dismissed by him and a writ of error sued out, bringing the matter to this court.

For the sake of clarity, the parties will be referred to as they were in the trial court, and as there were three automobiles involved in the accident, they will be referred to by the name of the driver of each car.

Defendant Bowman strenuously and ably argues that the court erred in refusing to give his instruction in the nature of a demurrer at the close of all the evidence, therefore, it will be necessary to detail the testimony more fully than we otherwise would.

The negligence charged against defendant Bowman is:

"1. That the defendant, L. E. Bowman slowed up and stopped his said automobile on said highway, on the right hand side of the center of the pavement, the same being the east side of said pavement, without any warning or signal of his intention to slow up or stop his automobile, failing to extend his arm from said automobile so that the same could be seen in the rear of his automobile, thereby affecting the movements of the automobile driven by defendant, John W. Dunfee in operation of his automobile behind L. E. Bowman's automobile, so as to cause the automobile driven by John W. Dunfee to run into and collide with the automobile in which plaintiff was riding.

"4. That defendant, L. E. Bowman slowed up and stopped his said automobile on said highway at said time and place in such a manner so as to obstruct the traveled portion of said highway.

"5. That defendant, L. E. Bowman slowed up and stopped his said automobile on said highway at said time and place immediately in the path of the automobile driven by defendant, John W. Dunfee, so as to cause John W. Dunfee's automobile to collide with the automobile in which plaintiff was riding."

Bowman's answer was a general denial.

The evidence discloses that at about 1:30 P. M., on February 6, 1941, the plaintiff was riding in an automobile driven by her husband, Dr. B. R. Moore, in a southerly direction along concrete Highway No. 13, about one mile north of Shawnee Mound in Henry County. The pavement was eighteen feet in width. Defendant Bowman was driving his automobile along the same highway in a northerly direction, and Dunfee was driving his car along the highway and in the same direction as Bowman, but to the rear of the Bowman car. Prior to the immediate incidents which caused the collision, all three cars were traveling at approximately the same speed, about forty-five to fifty miles per hour, and each was on its proper side of the road. At that point, the road was approximately level and straight and Dr. Moore and his wife saw the two cars approaching them on their proper side of the highway, and Bowman saw the Moore car meeting him and had also seen the Dunfee car following behind him, and knew it was there on the highway and traveling in the same direction he was. Bowman was intending to go to the home of a Mr. Jackson, which was on the opposite side of the highway, or to Bowman's left. The acci-

dent occurred about in front of the Jackson house. The Moore and Dunfee cars collided headon when the Dunfee car suddenly came from behind the Bowman car and onto the part of the pavement where the Moore car was. In describing the facts surrounding the collision, Dr. Moore testified: ''We were driving along just as any one would . . . we had seen two cars back to the south, paid very little attention until my attention was called by some brakes making a squealing noise which attracted my attention, and I noticed that the man who was almost stopped, and another man almost to him, and he was trying to stop, and swerved over and got in my way . . . and we come together in a headon. . . . The first thing I noticed about the front car (Bowman's) either it was stopped, or just barely moving; just barely moving . . . The front car was so slow that it was just barely creeping when my eyes came in contact with it. Immediately after that, though, before I got past his car, his wheels was turning faster, immediately after the collision.'' He said that after the collision the Bowman car was about even with the rear wheels of his car and each on its proper side of the pavement. He estimated the distance between the Bowman car and the Dunfee car when he heard the brakes of the Dunfee car screeching as about twenty-four or twenty-five feet. He estimated the speed of his car and the Bowman car at about forty-five to fifty miles per hour, as they came down the highway approaching each other, and that the Dunfee car was probably traveling four or five miles per hour faster. He had not noticed any particular change in the speed of any of the cars until he heard the screeching of the brakes and when he looked, he saw that the Bowman car was ''practically stopped or stopped, one of the two.'' He further said that the Bowman car was on the pavement at the time of the collision.

Defendant Dunfee was called as a witness by plaintiff and described the accident as follows: ''I was driving along there just like everybody else driving along the highway, and when I got pretty close to that accident, fact is, real close, why I noticed all of a sudden Mr. Bowman just suddenly stopped and when he suddenly stopped, why I tried to stop, too, but as he suddenly stopped faster than I did, we were driving about the same rate of speed, I couldn't quite stop, and I saw I couldn't quite stop. I turned out to miss him and when I turned out to miss him, why I pulled off on the other half of the slab, and when I pulled on the other half of the slab, I saw right down the road was Mr. Moore's car, and when I saw that Mr. Moore's car was coming, he was traveling probably just like us, maybe just a little bit faster, and when I saw that, I was practically stopped, and I couldn't get back around, couldn't pass him, because I had almost stopped, trying to stop behind him, I lost so much momentum, I was just barely going, and I couldn't get back to pass him, so I started to get back off the highway going in the other ditch so nothing would happen, but

I just couldn't make it clear off the highway." Later on in his testimony, he clarified the above statement by testifying:

"Q. When you noticed he stopped, how far ahead of you was he, from you? A. Well, there is a misunderstanding. I didn't exactly —there is two things there. What I mean is, he was stopped when I looked out the back window, but I didn't say he was exactly stopped when the accident happened, I said he was so close to being stopped I couldn't tell the difference, because I couldn't exactly swear that he was exactly stopped.

"Q. At the time that you pulled out? A. When I pulled out, he might have been stopped, see, but I couldn't swear he was completely stopped.

"Q. Didn't you testify a minute ago it was a sudden stop, or slowing? A. Yes, sir, just a fraction of a second before you completely stop, you are barely moving. He was so close to it, you couldn't tell the difference.

"Q. That is what I am getting at. How far ahead of you was his car just before you turned out? A. How close was he to me when I turned out?

"Q. Yes, when you made this turn here. A. . . . he must not have been over a car length.

"Q. Not over a car length in front of you? A. It was close; it might have been a little farther, but it was close.

"Q. Now, how far back up the slab, Mr. Dunfee, was it when you first noticed a sudden slowing of Mr. Bowman's car? A. How far up the highway from the accident?

"Q. Yes, back south there. A. Oh, it is just guessing, but I think it is somewhere around 150 or 200 feet.

"Q. That you noticed him slowing his car? A. Suddenly stopping.

"Q. Suddenly stopping? A. Yes, sir.

"Q. The pavement was dry? A. Yes.

"Q. Clear day? A. Well, yes, it was a clear day."

He again described the situation confronting him in this language: "When I was between 150 and 200 feet behind him, I noticed . . . that he was suddenly slackening . . . and I realized he was suddenly instead of slackening." Again he said: "When he (Bowman) started to slow down, he suddenly stopped. . . . I couldn't swear he was completely at a dead still, but he was so close to being stopped you couldn't tell the difference." He said he was traveling at about fifty miles per hour at that time. Then he was asked:

"Q. What did you do when you first noticed that he was slowing down, if anything? A. In a split second, I let up on the gas, took my foot off of the gas; that it what I thought he had done."

He had not noticed the Moore car approaching at that time. When he pulled out to pass around the Bowman car, he was from one to

three car lengths behind him and had slowed his own car then to about ten or fifteen miles an hour. He pulled out to pass the Bowman car when he realized he could not stop before striking it. He testified that Bowman did not give any signal or warning that he was going to slow down or stop his car. · In fact, Bowman admitted that he did not give any signal or warning.

Mrs. Moore testified that the first thing to attract her attention was the screeching of the brakes and ''I looked at them and the front car looked like it had just stopped or just barely creeping and the other car come out from behind it, and there was a collision.''

Defendant Bowman testified in substance that he was driving his Chrysler Sedan along the highway northward at about thirty-five to forty miles an hour, and on his right hand side of the pavement. When he was about one-half mile or more north of Shawnee Mound, he noticed a car following him, which was the Dunfee car and which at that time was about forty or fifty rods behind him. He had seen the Dr. Moore car come over the hill to the north of him soon after he had seen the Dunfee car behind him, and both cars were about the same distance from him at that time. He was going to see a Mr. Jackson (who lived on the opposite, or his left side of the road), and when he got about fifty or sixty yards from where he was going to turn out, he took his foot off the gas; he intended to turn out on the right hand side of the road, off on the shoulder, and then turn his car around to the left and across the highway and park it facing south, which would be the opposite direction from which he had been traveling. He said he just let his car ''coast right on down there.'' In that distance he had slowed from his speed of thirty-five to forty miles per hour to about ten or twelve miles an hour, and ''the next thing I knew, this car from behind, I heard the brakes of a car squeak and the impact of two cars coming together. . . . My car coasted right on out on the side of the shoulder of the road and then I put my brake on and stopped the car still. . . . I turned my car, I drove up about a car length at least that much on the shoulder, and then turned to the left over on the shoulder on the west side of the pavement and parked my car in front of the gate there, the yard gate they talked about. . . . I didn't stop my car on the pavement at any time before the wreck, nor after the wreck, never did I stop that car on the pavement. . . . I didn't touch the brake of that car at any time. It was just slowing down of its own accord because I took my foot off the gas and was letting it slow down, just slowing down. . . . I didn't put out my hand.'' He saw the Moore car approaching from the north and knew the Dunfee car was somewhere behind him, although he had looked in his rear vision mirror only once to observe the position of the Dunfee car. What he intended to do, he described as follows: ''I was going out on the right hand shoulder of that road and then make my left hand turn after the cars got

out of my way . . . That is what I intended to do, stop and go over to this house, that is what I usually do. . . . After all these cars got out of the way, I would have turned around; that is what I intended to do; . . . the reason I didn't have my hand out there to show him any signal, I hadn't got to where I was going."

We believe this is a sufficient statement of the facts to decide the issues presented on demurrer to evidence.

There is conflicting and contradictory testimony, but we are not called upon to decide which set of facts a jury must believe. We commend counsel for defendant for the frank and clear manner in which he presents his contentions. It is axiomatic that in passing upon the question of whether defendant's demurrer to the evidence should have been sustained, the facts must be considered in the light most favorable to plaintiff and she is entitled to have the benefit of all reasonable inferences that can be drawn therefrom. With that well recognized principle of law in mind, we discuss the reasons urged by defendant why error was committed in not sustaining his demurrer.

We think the evidence establishes certain facts about which there can be no dispute. That as defendant Bowman drove along the highway, he knew the Moore car was approaching him from the north and that the Dunfee car was following him, and that they were about equal distance from him before he began to slow down his car; that he did reduce the speed of his car on the highway without giving any signal or warning of his intention so to do; that the collision between the Moore and Dunfee cars occurred at approximately the rear end of the Bowman car and at a time when he was still on the pavement. The evidence may be conflicting as to whether he suddenly slowed or stopped, or whether he gradually slowed down, but in passing on whether a demurrer to the evidence should have been sustained, we do not undertake to reconcile conflicting testimony.

Defendant first contends that there is no substantial evidence that the alleged acts of negligence of defendant Bowman was the proximate cause contributing to plaintiff's injuries. We cannot sustain this contention, because, if the evidence in the record is to be believed, that Bowman "suddenly slowed his car" or "stopped it" on the highway without giving a signal of his intention so to do and thereby created a situation where defendant Dunfee, by the exercise of the highest degree of care, must either collide with the Bowman car or attempt to escape by driving to his left side of the highway, and as a result thereof, collided with the Moore car, then the contributing negligence of Bowman must be considered a proximate cause of the resulting injury. To support his contention, the defendant cites the case of Inman v. Walter Freund Bread Co., 58 S. W. (2d) 477; Vairo v. Vairo, 99 S. W. (2d) 113; and Rose v. Thompson, 141 S. W. (2d) 824. Those cases do announce the well-established rule that there must always be a causal connection between the negligence proven

and the resultant injury, and that the mere proof of negligence in some respect and á subsequent injury is not always sufficient to take the case to the jury. That is the general rule, but the facts in each case must determine whether there is a causal connection. In the case of Kimberling v. Wabash Railway Co., 85 S. W. (2d) 736, 337 Mo. 702, l. c. 714, the Supreme Court said:

"The test of whether there is a causal connection between the alleged negligence and the injury is that the facts show that, absent the negligent act, the injury would not have occurred."

Without again reciting the facts above set out, we conclude there was substantial evidence to justify the court in submitting to the jury the question of proximate cause.

It is also contended that the evidence, when considered most favorably to plaintiff, conclusively establishes that her injuries were the direct and proximate result of the *sole negligence* of co-defendant Dunfee, but the immediately preceding conclusion· we have reached answers this contention. Defendant Bowman ably argues that his car was on the highway immediately in front of and in full view of Dunfee, and that Dunfee could and should have seen his car slowing down in time. to have stopped or avoided colliding with the Moore car. That may be true in establishing negligence against Dunfee, but it would not relieve Bowman if he were negligent in failing to signal his intention of stopping or checking the speed of his car. [Greer v. St. Louis Public Service Co., 87 S. W. (2d) 240.] Section 8385(h), Revised Statutes Missouri 1939, requires the driver of a motor vehicle "when stopping, or when checking the speed of his vehicle," to give a signal by extending the arm, if the movement of other vehicles may reasonably be affected by such checking ·of speed. Bowman admits he did not do this, and also admits that he did not know the exact location of the Dunfee car back of him at that time.

Defendant also argues that the demurrer should have been sustained "because the evidence is contrary to the physical facts and inherently impossible," and cites that line of cases announcing the general rule that where testimony is, beyond reasonable doubt, contrary to physical laws and facts of common knowledge, it cannot be accepted as substantial evidence. We have no quarrel with that general principle, but it has no application under the facts in this case as we understand it. We see nothing in the above facts, when viewed in the most favorable light to plaintiff, which would justify us or the trial court in saying as a matter of law they are contrary to physical law and are unbelievable. We conclude that the court did not commit error in refusing to sustain defendant Bowman's demurrer to the evidence.

In reaching this conclusion, we have in mind that the party charged with negligence need not have anticipated the very injury complained of, or anticipated that it would have happened in the exact manner in

which it did, but it is only necessary that after the injury is complete, it appears to have been a natural and probable consequence of his act or omission. [Kuba v. Nagel et al., 124 S. W. (2d) 597.] Taking plaintiff's evidence as true, as we must on demurrer, and allowing her the benefit of every reasonable inference favorable to her case which the evidence tends to support, we are constrained to the view, and so hold, that the plaintiff made out a case for the jury, and that the demurrer was well ruled.

Defendant also contends that the court erred in giving plaintiff's Instruction Number 1, and because there are several criticisms leveled at it, we copy it in full:

"The Court instructs the Jury that if you find and believe from the evidence, that on the occasion mentioned in evidence the Defendant, L. E. Bowman, stopped or suddenly slowed up his automobile on the highway in front of the automobile driven by defendant, John W. Dunfee, if so, and that Defendant, L. E. Bowman failed to give a warning or sinal of his intention to slow up or stop his automobile, if so, and that as a direct result thereof Defendant Dunfee was unable to stop his automobile behind the Bowman car without striking the same, if so, and if you further find that Defendant Dunfee's automobile collided with the Moore automobile, in his attempt to avoid striking defendant Bowman's car, if so, then you are instructed that such failure on the part of Defendant Bowman, if any, would be negligence.

"And if you find under the facts and circumstances in evidence that the Defendant Bowman was negligent as above submitted; if so, and that as a direct and proximate result of such negligence on his part, if any, the Dunfee automobile struck and collided with the automobile in which Plaintiff was riding and that Plaintiff was injured thereby, if so, then your verdict should be for the Plaintiff and against Defendant Bowman."

The first criticism made is that the negligence submitted is not that pleaded, because, it is claimed, the petition merely alleged Bowman "slowed up and stopped his automobile" on the highway without a warning, while the instruction submitted that he "stopped or suddenly slowed up his automobile" without warning. But we conclude that defendant has placed a too narrow construction on the petition, because when the charge of negligence No. 1, *supra,* is carefully examined, we find the charge "that the defendant, L. E. Bowman, slowed up and stopped his automobile on said highway . . . without any warning or signal of his intention to slow up or stop his automobile, . . . ." We believe this allegation is sufficient to submit the question of whether he "slowed up or stopped his automobile." Furthermore, we find that the defendant adopted the same theory in his Instruction No. 7, wherein he submitted the converse of plaintiff's Instruction No. 1, by requiring the jury to find that the defendant "did not suddenly slow down the speed or suddenly stop his automo-

1174

bile . . . ." Having joined in trying and submitting the case on that theory, we do not believe the defendant is now in position to complain of Instruction No. 1 on that ground. [Crews v. Kansas City Public Service Co., 111 S. W. (2d) 54, l. c. 58, 59, and cases there cited.] The gravamen of the requirement of Section 8385(h), *supra*, is the failure to give a warning when checking the speed of an automobile on the highway when the movement of other vehicles may reasonably be affected thereby, and whether a driver slackened his speed to the extent of stopping may not be of any consequence. While the petition may not be as clearly drawn as desirable, nevertheless we think it is sufficient to authorize the giving of Instruction No. 1 in the matter above discussed.

Defendant also complains of this instruction because it tells the jury that they may find against the defendant Bowman, if he stopped or slowed his automobile on the highway in front of the Dunfee, automobile, without requiring the jury to find under what circumstances Bowman stopped or suddenly slowed his automobile, and without requiring any kind of a finding as to where the Dunfee car was at the time of such stopping or slowing. The above statute requires the giving of the signal in checking the speed of an automobile on the highway "if the movement of other vehicles may reasonably be affected" thereby. The evidence in this case discloses that Bowman knew the Dunfee car was behind him prior to the time he slackened the speed of his car, but that he did not know its exact location at that time, therefore, he must be charged with knowledge of facts which would impute to him the knowledge that the slackening of the speed of his automobile might affect the movement of the Dunfee car. Now, Instruction No. 1 does not literally follow the language of the statute, but it does require the jury to find that Bowman stopped or suddenly slowed his automobile "in front of the automobile driven by defendant Dunfee . . . and that as a direct result thereof, Dunfee was unable to stop his automobile behind the Bowman car without striking the same . . . and as a consequence thereof, Dunfee collided with the Moore car, etc." then Bowman would be liable. We hold that the instruction is sufficient in this particular, and that it was not necessary for the instruction to detail the evidence as to the location of the Dunfee car or its rate of speed or whether he was negligent in failing to stop his car before reaching the Bowman car. He may have been negligent in some respect, but, as we have said above, that did not relieve Bowman if he was also negligent and his negligence directly contributed to plaintiff's injuries. We think the instruction is sufficient to advise the jury that the slowing down or stopping of the Bowman car must have been at a time and under circumstances which would likely affect the operation of the Dunfee car, as required by Section 8385(h), *supra*.

Defendant also complains that the instruction assumed that Dunfee could not stop his automobile before striking the Bowman car, but a reading of the instruction will answer that contention.

It is ably and vigorously argued that this whole instruction is misleading and confusing, but we cannot sustain that contention. The instruction may not be a "masterpiece," but when all of the instructions are read together, we conclude there is no merit in this contention.

The last criticism leveled at this instruction is that it fails to take into consideration Bowman's contention that plaintiff's injuries were the result of the *sole negligence* of Dunfee and was therefore in conflict with Defendant Bowman's instructions Nos. 5, 6 and 7, which submitted to the jury the question of the injuries resulting from the sole negligence of Dunfee under various sets of facts in each instruction set out. He cites the case of Berry v. Kansas City Public Service Co., 108 S. W. (2d) 98, l. c. 104, to support such contention, but that case is not in point on that particular alleged error; it does discuss another matter urged by defendant Bowman and will be noted later. Plaintiff in her Instruction No. 1 covered her whole theory of liability on the part of defendant Bowman, without any reference to any liability on the part of defendant Dunfee, and in Instruction No. 2, submitted to the jury her theory of the liability of defendant Dunfee, which was founded upon a different set of facts than the alleged negligence of Bowman. There was no error in submitting in separate instructions the liability of each defendant and we conclude that the plaintiff was not required to qualify or included within her Instruction No. 1 a submission of the question of whether her injuries resulted from the sole negligence of defendant Dunfee. By his instructions No. 5, 6 and 7, defendant Bowman submitted that issue to the jury with the direction that if, upon certain facts therein detailed, plaintiff's injuries were the direct result of Dunfee's sole negligence, then Bowman was not liable. Contributory negligence on behalf of the plaintniff was not in this case either by pleading or evidence, and she submitted her case to the jury on primary negligence. Her instruction submitted to the jury the question of whether Bowman stopped or suddenly slowed up his automobile on the highway in front of Dunfee's automobile, and that he failed to give a warning or signal of his intention so to do and that *as a direct result thereof,* Dunfee could not stop his automobile without striking the Bowman car, and that as a result thereof, the Dunfee car collided with the Moore car and that because thereof, the defendant Bowman was negligent, and that *as a direct and proximate result of such negligence,* she was injured. Now, if the jury found that her injuries were the *direct result* of Bowman's negligence as therein defined, then they could not find that they were due to the sole negligence of Dunfee, and since such instruction would be the converse of a "sole cause" instruction,

it would exclude the necessity of plaintiff specifically including in her instruction a set of facts as to the injuries resulting from the "sole negligence" of Dunfee. [State ex rel. Snider v. Shain et al. (Mo.), 137 S. W. (2d) 527; Warren v. Giudice (Mo.), 50 S. W. (2d) 634; Sternkopt v. Cawein, 63 S. W. (2d) 443.]

Defendant also contends that Instruction No. 1 is erroneous because it assumes that defendant Dunfee was unable to stop his automobile behind the Bowman car without striking it. We don't so read and understand the instruction. It is also argued that the instruction is uncertain, indefinite and confusing, and was misleading to the jury. Without discussing in detail the able argument of counsel on this matter, we merely conclude that the instruction should not be held erroneous on such ground. We hold that plaintiff's Instruction No. 1 is not prejudiciously erroneous for the reasons assigned.

Defendant makes the point that plaintiff's Instruction No. 3, which was her instruction on the measure of damages, was erroneous as to defendant Bowman, because under the evidence there was no legal liability on him, but since we have ruled to the contrary, there is no merit in this contention.

The last ground of error charged by defendant Bowman is Instruction No. 4 given at the request of co-defendant Dunfee. In substance, the instruction told the jury that if they found that Dunfee was traveling along Highway No. 13 at a speed between forty and fifty miles per hour, and that he was following a car driven by defendant Bowman and that he, Dunfee, was using the highest degree of care for safety to himself and others, and that Bowman "negligently came to a sudden slowing down or stopping," and that Dunfee tried to stop and swerve with the appliances at hand to avoid collision with Bowman and that he was unable to stop in the distance under the circumstances then and there existing, and that defendant Bowman "negligently failed to give any signal or warning of his sudden stopping or slowing down on the pavement," and Dunfee swerved to the left to avoid colliding with Bowman, and that the collision between the Moore and Dunfee cars "was a direct and proximate result of any negligence of defendant Bowman in suddenly stopping or slowing down on said highway without any warning or signal and obstructing the traffic on the right side; *and failure of defendant Bowman to use the highest degree of care in looking in front and behind his car,* and that as a result of the aforesaid negligence of defendant Bowman, the court instructs that you must return a verdict in favor of Dunfee." (Italics ours.) This is not a well-drawn instruction and no doubt the plaintiff could have complained of its giving, had the verdict been against her, but since she recovered a verdict against Dunfee, grounds for her complaint need not be considered; but we must consider whether the rights of co-defendant Bowman have been prejudicially affected. It is the law

in this State that a defendant can complain of an instruction given at the request of the co-defendant which affects or "was calculated to affect" the question of his liability to the plaintiff. [Berry v. Kansas City Public Service Company, *supra*; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559; State ex rel. Nevins v. Hughes et al., 149 S. W. (2d) 836.] The last above cited case fully reviews the authorities which discuss the right of a defendant to complain of an instruction given at the request of a co-defendant which affects such defendant's liability to plaintiff, and we need not again collect the authorities.

Among other things, this instruction tells the jury that if Bowman failed "*to use the highest degree of care in looking in front and behind his car*" in addition to suddenly slowing down or stopping without a warning and that as a result of "the aforesaid negligence of defendant Bowman the court instructs that you must return a verdict in favor of Dunfee." This clearly included a ground of negligence against Bowman which the plaintiff did not submit in her instruction, and if it was in the case by pleading and proof, it had been abandoned by plaintiff and should not have been included in any other instruction. Almost the identical situation was held to be error by the Supreme Court in Berry v. Kansas City Public Service Company, *supra*.

In the present case, defendant Dunfee's Instruction No. 4 is in effect a sole cause instruction insofar as he is concerned, and included a charge of negligence (italicized above) against Bowman that had been abandoned by plaintiff. Such a situation would affect the rights of Bowman and would certainly tend to confuse and mislead the jury. The fact that it did not direct a verdict against Bowman would not cure the error. [Berry v. Kansas City Public Service Company, *supra*.]

We feel compelled to hold that the giving of this instruction was prejudicial error affecting the liability of defendant Bowman, and for that reason, the cause should be reversed and remanded. Since, however, defendant Dunfee did not appeal from the verdict and judgment against him, and since the error as to the appellant Bowman was the result of the action of Dunfee and not of the plaintiff, and since there is no claim that the verdict is excessive, we hold that the verdict should stand as to the liability and amount of damages as to defendant Dunfee, and that there be a new trial upon the question of the liability of defendant Bowman only, and when such liability of the defendant Bowman is established upon a retrial, then the court should enter judgment for the amount of the original verdict for damages against the defendant or defendants finally held liable; but pending such retrial as to the liability of the defendant Bowman, the trial court is directed to hold in abeyance the verdict as to both liability and amount of damages as to defendant Dunfee. [Hoelzel v. Chicago, R. I. & P. Ry. Co. (Mo.), 85 S. W. (2d) 126, l. c. 133-134.] All concur.