Laverta M. SEELEY, Respondent,

v.

Marion D. HUTCHISON, Appellant,
Alexander Hall, Defendant.

No. 46306.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 8, 1958.

Chapman & Chapman and Thomas W. Chapman, St. Louis, for appellant, Marion D. Hutchison.

Correnti & Godfrey, Michael F. Godfrey, St. Louis, for respondent.

BOHLING, Commissioner.

Laverta M. Seeley sued Alexander Hall' and Marion D. Hutchison for $45,000 damages for personal injuries sustained in an automobile collision. The jury returned a verdict in favor of plaintiff and against defendant Hall for $6,000 and against plaintiff and in favor of defendant Hutchison. Plaintiff filed a motion for new trial on the whole case. Defendant Hall filed a motion for new trial on the issue of his liability alone. The court overruled defendant Hall's motion, sustained plaintiff's motion for error in giving defendant Hutchison's instruction No. 13, and entered its order that the verdict and judgment "be set aside, vacated and for naught held". The two defendants appealed. Defendant Hall dismissed his appeal subsequent to the filing of the transcript here and prior to submission of the case in this court. See 42 V.A.M.S. Supreme Court Rules, rule 1.17. Defendant Hutchison contends plaintiff failed to make a submissible case against him and that said instruction was not erroneous. (Unless otherwise indicated "defendant" as used herein refers to defendant Hutchison.)

This three westbound in-line automobile collision occurred in St. Charles County about one-half mile west of the Daniel' Boone Bridge over the Missouri River on Highway No. 40 about 11:15 a. m. Saturday, November 26, 1955. It was a clear day and the pavement was dry. Highway No. 40 is a two-lane 20 feet wide, with a center line, heavily traveled concrete highway. The shoulders are wide enough for automobiles to park. Testimony established the normal speed on the highway to be 60 m. p. h.

Proceeding west from the bridge Highway No. 40 has a small "dip," followed by a.

gradual incline to the crest of a hill. The highway is then downgrade to a drain, where the grade is much less, and then upgrade, with a curve, to the crest of the hill to the west. About .2 of a mile west of the bridge, and near the crest of the first hill, is a gravel road, referred to as road 1. About .2 of a mile west of road 1 is another road or wagon trail, referred to as road 2. The collision occurred at road 2, which is in a "no passing" zone. Road 2 is a short distance west of the drain.

Mr. and Mrs. George Wright were taking plaintiff and her son to Vandalia, Missouri, plaintiff's home, following their visit with the Wrights in St. Louis over Thanksgiving. Defendant and Mrs. Hall accompanied them.

Defendant Hutchison and a lady were in his 1955 "Ford-Automatic." Mr. Wright was driving his 1949 Hudson sedan. Mr. Hall was driving his 1952 Ford Ranch Wagon. For convenience we sometimes designate these automobiles as car 1 (the lead car), car 2 (the middle car), and car 3 (the rear car), respectively. All three men were experienced drivers. Plaintiff, next to Mr. Wright, and the youngest Wright boy were on the front seat of car 2, and other members of the Wright party were on the rear seat of car 2 or in car 3.

Defendant Hutchison testified he was trying to locate the Schroeder farm. He started into road 1, almost immediately realized it was not the Schroeder farm, returned to the highway and continued westwardly.

Mr. Wright, driving car 2, came over the crest of the hill at a speed estimated at 35 to 40 m. p. h. He saw car 1 about 150 feet ahead of him, traveling about 25 to 30 m. p. h. He took his foot off the gas pedal and that tended to check his speed. Car 1 kept slowing down and when Wright was something like 50 feet from car 1 it was turned all at once into road 2 without any signal. Just as the front wheels of car 1 got off the highway the brake light came on and it "stopped right there." Wright "jammed on" his brakes and managed to stop just as the right front of the bumper of car 2 touched the right rear of car 1 very lightly. At that time both rear wheels of car 1 were still on the pavement. Car 1 then "rolled on off the highway" onto road 2 and stopped 8 or 10 feet from the pavement.

Meanwhile, defendant Hall was approaching in car 3. He was traveling about 60 m. p. h. as he came over the crest of the hill. He saw two cars ahead of him about half way or farther down the hill. He took his foot off the gas pedal but was not making a stop. The "drag" of the motor tended to slacken his speed. When he was at or a little past the drain he saw an eastbound car coming around the west crest of the hill and he applied his brakes lightly. He was then about 4 or 5 car lengths back of car 2, which was moving slower than he. Car 1 started turning into road 2. When he was a little more than a car length back of car 2 he saw its brake lights suddenly come on. Wright testified he did not have time to give any other signal. Hall applied his brakes hard and skidded his wheels. The testimony was that a hard application of the brakes tends to force the front end of a car down and the rear end up. In a second or two the front end of Hall's car, which was down, went under the rear of car 2, which had just stopped but "hadn't settled still," striking car 2 violently before Wright had taken his foot from the brake pedal, knocking it forward and injuring plaintiff. Car 3 left skidmarks 15 feet long. Hall estimated his speed at 25 to 30 m. p. h. when he forcibly applied his brakes. State Trooper Schacher, who arrived at the scene about ten minutes after the collision, estimated, from his observations and investigation, Hall's speed at approximately 40 m. p. h. when the brakes were applied.

Of defendant Hutchison's evidence. Road 1 was approximately 90 feet west of the crest of the first hill. The drain was approximately 550 feet west of road 1. Road 2 was approximately 186 feet west of the drain and about 12 feet wide.

Defendant Hutchison wanted to make arrangements at the Schroeder farm to go squirrel hunting. His speed down the hill was estimated at 20 to 30 m. p. h. He saw road 2 when he was near the drain, "couldn't see what was up in there," and slackened speed, he thought, to less than 20 m. p. h. when a little past the drain to turn onto the shoulder. He looked in his rear view mirror, could see 30 to 50 feet back of his car, and neither saw nor heard any approaching automobile. He gave the signal for his turn with his directional light and, without stopping, drove onto road 2 and, with the front of his car "about 12, 15 or 18 feet" off the pavement, stopped because of an erosion at the side of road 2, but could have driven up road 2. He also stated the rear of his car was 6 to 8 feet off the pavement when he stopped. He then heard the crash of glass on the pavement, turned around, looked through the rear window, and saw car 2 and car 3 "jammed together" on the pavement. He got out of his car, and, among other things, saw the skidmarks made by car 3. Asked how much time elapsed after his car left the pavement before car 2 and car 3 collided, he answered: "it seemed to be about, oh, oh, maybe ten seconds, fifteen or twenty seconds." He testified that if he stated in his deposition that the elapsed time was two seconds or less he was mistaken and his testimony from the witness stand was correct.

■ Defendant claims plaintiff failed to make a submissible case against him and his motion for a directed verdict should have been sustained, citing Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 489 [14], and Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840, 845 [6], 852, 164 A.L.R. 364, 370 [6]. A defendant's instruction does not prejudice a plaintiff who has no case. Graves v. Atchison, Texas & S. F. R. Co., 360 Mo. 167, 227 S.W.2d 660 [3].

■ Under plaintiff's evidence Wright had not taken his foot off the brake pedal of car 2 and car 2 had not "settled" from its violent stop brought on by Hutchison's stopping on the pavement when car 3 ran into the rear of car 2. A jury could find that in the attending circumstances a reasonable probability of some injury should have been anticipated by Hutchison. Hutchison's acts had not become passive but were still active and no break existed in the chain of events initiated by his starting to turn without warning and suddenly and unexpectedly stopping on the pavement ahead of car 2 and the consequences brought about by his said acts; i. e., car 3 running into the rear of car 2 a second or two thereafter and injuring plaintiff. A jury could find that absent Hutchison's acts the injury would not have occurred. Dickerson v. St. Louis Pub. Serv. Co., 365 Mo. 738, 286 S.W.2d 820, 824 [3–5, 8–10] citing cases; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 249 [11, 13]; Cox v. Wrinkle, Mo., 267 S.W.2d 648, 654 [9]; Floyd v. St. Louis Pub. Serv. Co., Mo., 280 S.W.2d 74, 78 [8–10]; Bowman v. Moore, 237 Mo.App. 1163, 167 S.W.2d 675, 679 [3].

■ In defendant's case of Hemminghaus v. Ferguson, supra, plaintiff offered defendant Ferguson to make a case against defendant Markland and defendant Markland's driver's and his own testimony to make a case against defendant Ferguson. Plaintiff's and the driver's testimony showed "Ferguson had plenty of time to avoid the collision." There was testimony that Ferguson was not looking. (A somewhat similar situation existed in Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, 246 [6–8].) The court held Hemminghaus could not go to the jury on conflicting theories of fact to recover against both defendants. The judgment against Ferguson was upheld. Defendant stresses Trooper Schacher's approximation of Hall's speed at 40 m. p. h. and includes references to testimony of defendant and of Hall in arguing his position. Defendant and Hall were not plaintiff's witnesses, and plaintiff was not bound by their testimony. Whether Hall's speed was about 40, 30 or 25 m. p. h., plaintiff's testimony did not establish that defendant was not concurrently negligent.

State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406, 407 [2]. Defendant's Ford Motor Company case, supra, involved entirely different facts.

Defendant's instruction No. 13 read:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence the defendant Marion D. Hutchison did not stop his automobile on the highway in front of the automobile in which plaintiff Laverta Seeley was riding, if so, without giving a timely warning or signal of his intention to do so, and if you further find that the driver of the automobile in which plaintiff was riding, if you so find, stopped said automobile behind that of defendant Hutchison and without any injuries or damages being thereby occasioned, and if you further find that thereafter the automobile in which the plaintiff was riding and was so stopped on the highway was violently collided with in the rear by an automobile being driven by defendant Hall, and that such conduct on the part of defendant Hall was negligence as that term is used in these instructions, and if you further find that such negligence was an intervening cause of whatever injuries and damages that may have resulted to person or property on said occasion, then your verdict in this case should be against the plaintiff and in favor of defendant Hutchison. You are further instructed that this is true even though you may find that the plaintiff was not herself negligent in any respect at said time and place so as to cause or contribute to cause whatever injuries and damages she may have then and there or may have as a consequence sustained as the result of the aforesaid collision. And this is true, even though you may find that defendant Hutchison was negligent in the operation of his automobile at said time and place."

■ Instruction No. 13 is confusing. A defendant may submit his defense of not being negligent by a converse instruction, or, among other defenses, absolve himself from liability on the ground that plaintiff's

injuries were solely and proximately caused by the act of some third person or, if defendant be negligent, that his negligence was not contributing or concurrent negligence. This instruction first attempts to submit facts exonerating defendant from all liability; and then submits for determination a finding that defendant Hall negligently caused car 3 to collide violently with the rear of car 2 and that if "such negligence was an intervening cause of whatever injuries" plaintiff sustained, the verdict should be against plaintiff and in favor of Hutchison. Then follow additional directions that "this is true" even though plaintiff was not contributorily negligent, and even though "defendant Hutchison was negligent in the operation of his automobile at said time and place." The instruction apparently combines features of several possible defenses, and is argued here, as in the trial court, as submitting the defense that defendant Hall's negligence was such an intervening efficient cause as to relieve Hutchison of liability.

■ Defendant refers us to no authority sustaining his contention that the instruction correctly states the applicable law. Defendant's argument undertakes to justify the closing sentence of the instruction as informing the jury that even though they found defendant negligent "that the law on intervening cause was that, if at some time thereafter, they believed his negligence ended and that plaintiff would not have been injured but for the negligence of defendant Hall, they should return a verdict for defendant Hutchison." We find no requirement in the sentence for a finding that defendant Hutchison's negligence had ended or ceased to be operative.

It is stated, so far as material here, in 65 C.J.S. Negligence § 290 b, p. 1242, that: "Where there is evidence of a 'new and independent cause,' the definition of 'proximate cause' must refer to and exclude it, and should define and differentiate it from 'proximate cause' * * *. The jury must be instructed properly as to when interven-

ing negligence insulates the original act and becomes the sole proximate cause. * * * While it is the duty of the court to define 'intervening cause,' it must leave to the jury the question whether certain facts constitute an intervening cause * * *."

 "Generally, we may say that an efficient, intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury * * *; but it may not consist merely of an act of concurring or contributing negligence." Dickerson v. St. Louis Pub. Serv. Co., 365 Mo. 738, 286 S.W.2d 820, 824 [3]. The phrase "intervening cause" is probably not capable of a uniform definition. A common meaning of "intervene" is: "To occur, fall, or come between points of time or events." Webster's New International Dictionary, 2d Ed. It is so used in the instruction, and a jury of laymen, without further direction, would so construe the phrase "intervening cause" in the submitted finding that defendant Hall's "negligence was an intervening cause of whatever injuries" plaintiff sustained. This submission in the instruction is insufficient in law to absolve an original tort-feasor of liability as the negligence of one defendant may occur prior to that of another defendant in point of time or event and both may constitute concurring or contributing proximate causes of the ensuing results. Consult Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254, 257 [7]; Fawkes v. National Refining Co., 341 Mo. 630, 108 S.W.2d 7, 11 [11–15]; Lawrence v. Heidbreder Ice Co., 119 Mo.App. 316, 328, 93 S.W. 897, 900; Cregger v. City of St. Charles, 224 Mo.App. 232, 11 S.W.2d 750, 753 [1–5]. An intervening cause constitutes a defense when it so supersedes and isolates defendant's negligence as to preclude its being a legal or proximate cause of plaintiff's damages. Dickerson v. St. Louis Pub. Serv. Co., supra; Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, 246 [6–8]; DeMoss v. Kansas City Rys. Co., 296 Mo. 526, 246 S.W. 566, 567.

Whether defendant be entitled to instruct on sole cause or intervening cause will depend on the facts adduced upon retrial.

The order granting a new trial is affirmed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.